## J. E. BEBB v. TIMOTHY CROWE et al.

1. HOMESTEAD—*What is.* The word "homestead" is used in the constitution in its popular sense. It represents the dwelling house where the family resides. Its tests are use and quantity.

2. ——— *Used as a Place of Business.* If the homestead should also be used as a place of business, it will not for that reason alone cease to be a homestead if the part so used would be necessary or convenient for the use of the family, independent of the business.

3. ——— *Used in Fact as a Homestead.* The question of whether a building is a residence does not depend upon the style in which it was built, or that it would be more valuable as a place of business than a dwelling house, but upon the fact of whether it is actually used as the residence of the family.

4. ——— *Not Destroyed by Lease of Part of Building.* The fact that a part of the building is leased to another, who carries on a mercantile business in the part leased, does not destroy its homestead character when the owner reserves the right of using it as the means of going to and coming from the part used as his home.

5. ——— *Addition to Residence, Exempt.* Where a small addition is built against the residence, and is used a part of the time as a butcher shop by the owner, and is sometimes leased as an office, such addition being a part of the homestead, it is exempt from forced sale.

*Error from Decatur District Court.*

ACTION by *Crowe* and wife to restrain *Bebb*, as sheriff of Decatur county, from selling lot 25, in block 5, in the city of Oberlin, which lot they claimed as their homestead. At the trial in the district court, at the January term, 1887, judgment was rendered in their favor. The court made special findings of fact, which are as follows:

"In 1879 the plaintiffs were husband and wife, and at that time came- to Oberlin and purchased lot 25, block 5, in what is now the city of Oberlin. The lot is located on the principal business street of Oberlin, and at this time is in the center of the business portion of said street. The dimensions of the lot are, 25x120 feet, and the value of the lot and building is about $1,900. The plaintiffs built on said lot a two-story frame building with square front, 20x40 feet. The lower story is all in one room, and has a door in the front and rear ends, and a door at the northwest corner. The lower room was originally designed for and fitted up for a store-room; the upper story was divided into six rooms for use as living rooms for plaintiff's family, which consisted of his wife and three children. The said building fronted on Penn avenue, and is situated on the south of said lot. The lot extends back about 120 feet to an alley, which is fifteen feet wide, and connects with the street on the north and south sides of said building. In about the year 1883, the plaintiffs built a shed at the back of said building, connecting with it, which is about 15x25 feet in dimensions; also, at about the same time they erected a building 6x20 feet along the north side of the main building, fronting on Penn avenue. A stairway led from the upper story on the north side of the main building, and at a point about fifteen feet from the south end thereof, down to the ground, and landed at the door at the northwest corner of the main building. And after the back of the main building was built, a door was cut through from the bottom of the stairs leading into said shed. The stairway was covered by a roof, which was effected by extending the roof of the small building on the north side of the main building along the entire length of the said main building, and also partially by a kind of hip. roof over the top landing of the stairs. The plaintiffs used the building and additions as a dwelling-house and store-room up to the time of the levy in February, 1886. The plaintiffs used the store-room to sell merchandise in, and stored heavy articles of merchandise in the shed at the back of the main building; also, they used a cellar which extends under the entire length of the main building, and has an entrance in said shed. They also, as a rule, and almost all the time, passed through the store-room in the main building to get to the street, and in fact had no other means of ingress and egress except through said store-room, except by passing through said shed and out to the rear end of the lot to the alley, and from there to one or the

other of said side streets. The lots on either side of said lot 25 were closed by buildings fronting on Penn avenue, and extending back about the same distance or farther than plaintiff's building did. The small addition 6x20 feet on the north side was used at first by plaintiff as a butcher shop in conection with a mercantile business in the main building. There is no door leading from the main building to the said office on the north side. A part of the time from 1879 up to February, 1886, the lower room of the main building and the shed were rented to tenants, who sold goods therein, but the plaintiffs retained the right to pass through the store building and shed to get to their rooms above, and always used the cellar, and stored household stores in the rooms on the ground floor. The narrow addition 6x20 was rented by attorneys for an office most of the time since it was built. At the time of the levy the lower store-room and shed were rented to a Mr. Lippincott, who sold general merchandise therein, subject to plaintiffs' use as last above stated. The plaintiffs have lived in the upper story of said building, and used the lower part as above set forth, ever since building it in 1879, and have at all times claimed it as a home and homestead. The defendant levied on the lot and all appurtenances therein, but now claims a right to sell thereunder only the small frame addition 6x20 feet on the north side of the main building, and the lower room of the main building and the shed at the back thereof, leaving exempt to the plaintiffs the upper story, the right of ingress and egress, and the lot itself."

*Wilson, Decker & Addleman,* for plaintiff in error.

*S. W. McElroy,* for defendants in error.

Opinion by HOLT, C.: The sole question we shall consider is, whether under the findings brought here this lot was occupied by the plaintiffs as their homestead. A homestead is limited in its extent in this state, and must be occupied as a residence of the family, but there is no limitation on its value; hence a part of the authorities cited by counsel have no application in this case. In passing to the discussion of matters that properly arise in this decision, we will say that it is evident that the claim of plaintiffs to this property as their homestead was not the means of withholding any great amount of

property from their creditors.   It certainly cannot be an un-
necessarily commodious and expensive residence, when it is
the home of a family of seven, and being situated upon the
main street of a young and thriving city is worth, with the
buildings thereon, only $1,900.   We believe we do not vio-
late the spirit of the homestead law, and aid dishonest debtors,
when we declare the property exempt if it comes within the
letter of the law.

From the findings we learn that this had been the home of
the plaintiffs long before this debt was contracted which was
sought to be satisfied by the sale of the property.   The sec-
ond story of the main building was entirely occupied by the
family, and the first story partially; and they also used the
cellar or basement of the building jointly with the tenant, for
a store-room.   This occupation would usually be sufficient to
make it the residence of the family, and bring it within the
provisions of the homestead law as interpreted in this state.
(*Rush v. Gordon*, 38 Kas. 535; *Hogan v. Manners*, 23 id.
551; *In re Tertelling*, 2 Dill. 339.)

But defendant claims that there is this distinction in this
case from those referred to, because a part of the lower story
and basement was not occupied by the plaintiffs themselves,
but was leased, and the tenants were carrying on therein a
mercantile business; and also that there was a room attached
to the main building which was a part of the time leased and
a part of the time occupied by plaintiffs as a butcher shop, and
which had no door opening into the main store-room.   The
defendant levied upon the lot and appurtenances, and now
wishes to sell thereunder, the shed or addition, and the lower
story only, leaving the upper one and the basement as the
homestead of the family.   There is a question whether that
part of the property could be sold under the levy and execu-
tion, even if it should be held that it was not exempt; but we
shall examine only the question whether the occupancy of a
part of the building would destroy the homestead right of
plaintiffs in that part of the building so used.   It appears that
the lower or first story was not exclusively occupied by the

tenant. The owner reserved the right to go to and from the stairway leading to the second story; without that right the part of the building occupied by the family would have been less convenient; their most easy way of ingress and egress, being by way of the stairs, reached by going through the store room, would have been cut off. But leaving out this right to go through this room, which seemed almost indispensable in this instance, why should not an owner do as he wishes with his own building, when it is in reality his own residence, the abode, the dwelling-house, the home of his family? Of course if it should practically become a business house rather than a home, it would then cease to be exempt. The owner had the privilege of using any part of the building for his family; the basement, first floor, or second floor; the exemptions do not depend upon so frail a thread as which part of a dwelling a family must use, nor does the architecture of the building, or the question whether it would be more convenient as a store than a dwelling-house, decide its character; the test is whether the building was used as a residence, not nominally, but actually. We believe it was in fact the residence of plaintiffs. It certainly was the only home they had, and we believe it came within the provisions that exempt it from forced sale. (*Umland v. Holcombe*, 26 Minn. 288; *Phelps v. Rooney*, 9 Wis. 70; *Kelly v. Baker*, 10 Minn. 154; *Gainus v. Cannon*, 42 Ark. 503.)

The remaining objection, that the shed or addition was not occupied as a residence, can be disposed by saying it was simply an addition to the main building, and is exempt.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.