## WILLIAM C. ADAMS et al., Appellants, v. ROSENA S. ADAMS et al.

### Division One, July 1, 1904.

1. **HOMESTEAD: Extent of.** If the homesteader actually occupies a part of the premises, and the whole is within the statutory size, the fact that he rented out a part of it and that that part was separated from the part in which he dwelt by a partition wall, does not prevent that part from being a part of the homestead, but the whole is his homestead. The statute contemplates that a part of the homestead may be rented, so as to afford sustenance as well as shelter for the family.

2. ———: **Election-Dower.** The widow who has elected to take one-half the estate of her deceased husband absolutely, subject to his debts, is entitled, in addition, to homestead in the other half of the land.

3. ———: ———: **Payment of Homestead Mortgage.** In a suit between the widow, who has elected to take one-half her husband's estate, subject to his debts, in lieu of dower, and his collateral heirs, she does not have the right to have a mortgage, placed on the homestead during her husband's life and signed by her, to secure the payment of his debts, paid out of the other lands left by him, which were not covered by the mortgage. The court can not compel those other unmortgaged lands to be sold to pay the debt before resort can be made to the mortgaged homestead.

4. ———: **Husband's Debts: Mortgage on Homestead: Security.** The act of the wife in signing a mortgage on the homestead to secure the husband's debt does not put her in the attitude of a surety of his debt, but is a relinquishment of her inchoate interest in his property.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

REVERSED AND REMANDED.

*J. W. Walsh* and *F. H. Sullivan* for appellants.

(1) The court erred in assigning to respondent the whole of lot 81, Shand's addition, as a homestead. R. S. 1899, secs. 3616, 3620; Kyte v. Perry, 25 Mo. App. 400; Finnegan v. Prinderville, 83 Mo. 521; Brewing Ass'n v. Howard, 150 Mo. 451; Hufschmidt v. Gross, 112 Mo. 655; Bryson v. Shelly, 11 Mich. 528; Tiernan v. His Creditors, 62 Cal. 286; Maloney v. Hefer, 75 Cal. 422; Sohermes v. Beiser, 93 Ky. 415; Hendricks v. Hendricks, 13 Tex. Civ. App. 49; Stringer v. Swenson, 78 Tex. 550; Blum v. Rogers, 78 Tex. 530; Ashton v. Ingle, 20 Kan. 670; Schoffer v. Laundauer, 60 Wis. 334. (2) The court erred in decreeing that the incumbrance upon the homestead should be paid out of the proceeds of the sale of the rest of the property. R. S. 1899, sec. 191; Smith v. Stephens, 164 Mo. 415; Ailey v. Burnett, 134 Mo. 313; Allen v. Degroot, 105 Mo. 451; McGowan v. Boldwin, 46 Minn. 480; Selb v. Montague, 102 Ill. 446, 106 Ill. 49; Everson v. McMullan, 113 N. Y. 293. (3) The court erred in adjudging that respondent was entitled to the homestead and in addition to one-half of the rest of the property under her election. R. S. 1899, secs. 3621, 3929; Newman v. Newman, 162 Mo. 186; Van Arb v. Thomas, 163 Mo. 42; Bryan v. Rhodes, 96 Mo. 489; Becker v. McLinn, 107 Mo. 289; Graves v. Cochran, 68 Mo. 76; Gore v. Riley, 161 Mo. 238.

*Clinton Rowell, Jos. H. Zumbalen* and *Jos. S. Laurie* for respondents.

(1) The purpose of the statute was to secure a shelter for the owner and his family, and likewise to furnish a means of support. Such statute being remedial and not in derogation of the common law, should receive a liberal construction. Our statute sets apart for the head of a family the dwelling-house and the lot or land upon which the same stands, together with "the rents, issues and products thereof." The only limitation imposed by the statute is as to the area of the

ground and the value of the premises.   Webb v. Davis, 37 Ark. 551; Smith v. Stewart, 13 Nev. 65; Hubbel v. Canady, 51 Ill. 425; 15 Am. and Eng. Ency. of Law (2 Ed.), 583, 584; Marks v. Thrut, 30 So. 831; Brown v. Moore, 64 S. W. 781; Barry v. Meir, 70 Ark. 129; Mercier v. Chase, 11 Allen 194; Pratt v. Pratt, 161 Mass. 276; Layson v. Franger, 48 Kan. 440; Bank v. Ayers, 48 Kan. 602; Colbert v. Henley, 64 Miss. 374; Kelley v. Baker, 10 Minn. 154; Jacoby v. Dist Co., 41 Minn. 227; Growenig v. Beck, 93 Iowa 711; Acker v. Trueland, 56 Miss. 30; Buxton v. Dearborn, 46 N. H. 43; In re Ogburn's Estate, 105 Cal. 95; Bebb v. Crow, 39 Kan. 342; Baldwin v. Tellery, 62 Miss. 378; Phelps v. Rooney, 9 Wis. 76; De Ford v. Painter, 3 Okla. 80; Perkins v. Quigley, 62 Mo. 498; Gentry v. Gentry, 122 Mo. 218; Brown v. Brown, 68 Mo. 388; Shores v. Shores, 34 Mo. App. 212; Albrecht v. Imbs, 3 Mo. App. 587.   Under the decisions cited it is clear that Mr. Adams might have constructed his house with a view of renting out the entire first floor for business purposes and occupying the second floor as a dwelling for his family without impairing his right of homestead in the whole.   What difference can it make that he divided the building laterally instead of horizontally?   (2)   The evidence shows that the mortgage on the homestead was given to secure a debt of the husband, evidenced by his note.   The contention of the widow that the estate of her husband should be required to relieve her homestead of said encumbrance may be sustained upon several grounds: *First,* the husband, at the time his wife signed the deed, agreed with her to pay off said encumbrance at maturity, and thereby restore the homestead; *second,* her position is that of a surety whose property is pledged for the payment of the debt of another; *third,* upon general principles.   When the husband executed said note, he made an express agreement and promise to and with the holder to pay the same at maturity.   His wife, we have the right to assume, signed the deed securing

said note upon the faith of such agreement and promise,. which stood also as an agreement and promise by him with and to her that he would pay the note at maturity,. and wipe out the encumbrance upon the family homestead; so there was, if not an express, certainly an implied, agreement and promise upon his part to and with her to the effect as above stated. The liability of the heirs arising from covenants and agreements of the ancestor is wholly independent of the probate court, and may be enforced by proceedings directly against them. Budde v. Rebenack, 137 Mo. 185; Weatherford v. King,. 119 Mo. 58; Herschenroeder v. Herschenroeder, 75 Mo. App. 285. "The wife who has mortgaged her property for her husband's debt, stands in the position of a surety, and may claim indemnity, and is entitled to have her estate exonerated out of the estate of her husband." Pingrey on Mortgages, see. 356, citing Wilcox v. Todd, 64 Mo. 388. In the case cited, it is held that it is not necessary that the property of the wife, thus held as security for the husband's debt, should be her "separate estate." Under such conditions, the wife occupies "the position of a surety, with all the rights, legal and equitable, incident to that relation." Bank v. Burr, 46 N. Y. 170; Wilcox v. Todd, supra.. The principle involved can be readily applied to the case at bar. The primary object of the Legislature in the creation of a homestead was to secure a home for the wife and children, if any, during the life of her husband, and after his death a shelter and means of support for the widow during her life or widowhood. Even during the life of the husband, the wife has a substantial property right in the homestead— a right of which she can not be divested by any mortgage or conveyance of the husband. Blandy v. Asher, 72 Mo. 36; Biffle v. Pullman, 114 Mo. 53; Gladney v. Berkley, 75 Mo. App. 102; Rogers v. McFarland, 89 Iowa 286; McLaughlin v. Hart, 46 Cal. 638. (3) By virtue of her election, the widow in the case at bar be-

came entitled, under the provisions of the statute (sec. 2939), to one-half of the estate belonging to the husband at the time of his death, absolutely, subject to the payment of debts. As the homestead which passed to her instantly upon the death of her husband did not belong to him, and did not constitute any part of his estate, it follows that under the election giving her one-half of the real and personal estate belonging to her husband she became entitled to such one-half, in addition to the statutory homestead which had already passed to and vested in her as an estate for life.

MARSHALL, J.—This is an action for the partition of certain land in the city of St. Louis. Partition was decreed, but the circuit court held that one of the lots was a homestead and that the widow was entitled to occupy the same for life or during widowhood, and that as the husband died without any child or other descendants in being capable of inheriting, and as the widow had elected to take one-half of the real and personal property belonging to the husband at the time of his death, absolutely, subject to the payment of the husband's debts, and as there was a mortgage on the homestead, the trial court further held that the mortgage should be paid out of the proceeds of the sale of the other portion of the estate, so that the homestead should be free and the widow and the collateral heirs should contribute equally towards the payment of the mortgage. The plaintiffs excepted to this ruling, and appealed, and these are the questions at issue here. The facts necessary to the determination of the legal issues will be stated in the course of the opinion.

I.

The first error assigned is the ruling of the trial court that one of the lots was the homestead and that the widow is entitled to occupy it for life or during widowhood.

Robert Adams owned lot 81 of Shand's addition to the city of St. Louis, and he executed a deed of trust thereon, his wife, the defendant Rosena S. Adams, joining with him, to secure a debt of $1,000. The lot had a front of twenty-five feet on Warren street by a depth of one hundred and fourteen feet. On this he erected a certain house covering the width of the lot, and under a common roof. He divided the house, lengthwise, into two equal parts, with a wall between and no means of communication between the two. Each part had six dwelling rooms of equal size. There was a common pair of steps from the street to the house. One of the parts was numbered 1530 and the other 1532 Warren street by the city authorities. He erected the building for the purpose of making it his homestead. Upon its completion he moved into number 1530 with his wife, he having no children, and occupied it thereafter as his homestead until his death. The other part he rented out. The whole property did not exceed eighteen square rods or three thousand dollars in value. Under these circumstances the plaintiff claims that only the portion actually occupied by him constituted his homestead, and that the portion that was rented did not constitute any part of his homestead, and hence the trial court erred in treating the whole of it as the homestead.

Section 3616, Revised Statutes 1899, provides: "The homestead of every housekeeper or head of a family, consisting of a dwelling-house and appurtenances, and the land used in connection therewith, not exceeding the amount and value herein limited, which is or shall be used by such housekeeper or head of a family as such homestead, shall, together with the rents, issues and products thereof, be exempt from attachment and sale as herein provided," etc.

And section 3620 provides that upon the death of such housekeeper or head of a family, such homestead

shall pass to and vest in the widow or children or if there be both, to both, and shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon during his lifetime, until the youngest child shall attain its legal majority, and until the death or remarriage of the widow and then it shall pass to the heirs of the husband.

The simple question in this case, therefore, is whether by reason of the construction of the house into said two parts and the renting of one part while the head of the house lived in the other part, deprived the part rented of its character as a homestead.

In Perkins v. Quigley, 62 Mo. l. c. 503, the defendant owned two tracts of land of forty acres each, which were contiguous. Each had a dwelling-house on it. He lived on one with all his family except a son who lived on the other. He cultivated both. Together they did not exceed in area or value the statutory homestead. He claimed both as his homestead, the one as appurtenant to the other. This court, per NAPTON, J., held that they were both parts of his homestead, saying: "But contiguity does not seem to enter into our statutory definition. A householder or head of a family may, under our law, own forty acres in one place, and cultivate forty more in another by himself, his children or servants or tenants. It frequently happens that a prairie farm is dependent upon a piece of woodland several miles distant, and both may constitute the homestead; or the owner of a piece of ground on a bluff, where there is a convenient spring and timber, may cultivate a farm in the valley totally separated from the place of residence by any conceivable distance, that would not render the one incapable of being used in connection with the other. The only restrictions named in the act are the quantity of land and its value."

The general rule of law is that the premises must be actually, visibly occupied by the homesteader and his

family. [15 Am. & Eng. Ency. Law (2 Ed.), p. 582;
Brewing Assn. v. Howard, 150 Mo. l. c. 451.] But while
this is true it is equally true that if the homesteader
so actually occupies a part of the premises, he may rent
out one or more rooms or parts of the premises and
thus derive a means of sustenance as well as a shelter
therefrom, and this fact will not impair the right to
claim the whole as his homestead. And this legally
and logically is true whether the part rented out be a
lateral, a horizontal, a longitudinal or a vertical part of
the premises.

The rule is thus stated by a valuable work:

"If premises, however, are in fact used by the
owner as a residence for himself and family, the right
to claim them as a homestead is not necessarily de-
feated by the fact that they are not all required for
such purpose, and that they are partly used for other
purposes. As a rule, where the constitution or statute
exempts a certain quantity of land owned and occupied
by a debtor, the whole quantity is exempt if occupied
as a residence of the debtor and his family, without re-
gard to the use to which he may put the land or the
business he may pursue thereon. In most states, there-
fore, the fact that the residence of a debtor is also used
in part as his place of business does not prevent the
whole of it from being exempt as his homestead. Thus,
if a building claimed as a homestead is in fact used as
the owner's family residence, the entire building is ex-
empt, though one of the rooms, or even an entire floor,
may be used as an office, shop, or store. And according
to the better opinion, premises which are used by the
owner for the purposes of a hotel or lodging-house are
exempt as his homestead, where he also resides there
with his family. . . . If a building is used by a debtor
as his family residence it may be his homestead, and ex-
empt as such, notwithstanding a part of it may be
leased to others for residence or business purposes."

[15 Am. & Eng. Ency. Law (2 Ed.), pp. 583, 584, and cas. cit.]

A few of the many cases cited in the text and in the briefs of counsel will serve to point the rule. In Brown v. Brown, 68 Mo. 388, the owner rented the homestead and reserved only one room in the house for himself. Held that the tenant did not thereby become the head of the family. In Albrecht v. Imbs, 3 Mo. App. 587, it was held that "the fact that rooms in the house used as a homestead were rented out, does not affect the widow's rights under the homestead act." In Mercier v. Chace, 11 Allen 194, and in Pratt v. Pratt, 161 Mass. 276, it was held that the homestead included the whole house although a portion thereof is rented to third persons. Like rulings were had in Layson v. Grange, 48 Kans. 440; Colbert v. Henley, 64 Miss. 374; Bebb v. Crowe, 39 Kan. 342; Phelps v. Rooney, 9 Wis. 76; DeFord v. Painter, 3 Okla. 80.

The plaintiff to establish the contrary relies chiefly upon Dyson v. Sheley, 11 Mich. 527, and Tiernan v. His Creditors, 62 Cal. 286. But counsel for defendants claim that the force of the California case is impaired by the subsequent case of Lubbock v. McMann, 82 Cal. 226, where it was held that if the homesteader subsequently builds another additional dwelling upon the same lot, it will not destroy the character of the part rented as a homestead. But a careful reading of that case does not bear out the claim, for the case of Tiernan v. His Creditors, supra, is expressly cited and followed, and a distinction is drawn between the two cases. In the Tiernan case the two houses were built on the same lot before there was any homestead established on the lot and it was held that only the part of the lot actually occupied was a homestead. Whereas in the Lubbock case the whole lot was first impressed with the homestead and the additional dwelling. was afterwards erected. The distinction doubtless arose from the fact that the statute of that State requires that a declaration

or claim of homestead shall be filed and also requires actual occupancy at the time of the filing of the declaration. But the distinction shows that courts always construe the homestead laws liberally and sustain the claim of homestead wherever it can be done.

The weight of authority, outside of States having such statutory requirements, is as stated in the text quoted from. The policy of the law is declared in Stevens v. Hollingsworth, 74 Ill. 202, to be: "The intention of the Legislature, in enacting the homestead exemption law, was not to save a mere shelter for the debtor and his family, but it was to give him the full enjoyment of the whole lot of ground exempted, to be used in whatever way he may think best for the occupancy and support of his family, whether in the way of cultivating it, or by the erection of buildings upon it, either for carrying on his own business or for deriving income in the way of rents."

Our statute exempts the dwelling-house and appurtenances, "together with the *rents,* issues and products thereof," and allows one hundred and sixty acres of the value of fifteen hundred dollars, in the country, and eighteen square rods of the value of three thousand dollars, in cities having a population of over forty thousand inhabitants (as here).

The lawmakers evidently intended to allow a part of the homestead to yield rent so as to afford sustenance as well as shelter for the family. To hold otherwise would make it impossible, or at least extremely difficult, for a widow who was left with young children, and no property except the homestead, to retain or enjoy the homestead. She must actually occupy a part of it, but she may rent out a part to get something to help her live. So may, and many times must, a poor, old or sick head of a family, who cannot earn enough otherwise to "keep the wolf from the door."

In this case the house was all a homestead and it is wholly immaterial whether or not the part rented was

separated from the part actually occupied. The circuit court properly held that the whole lot was a homestead.

## II.

The next question is whether the mortgage on the homestead was properly ordered to be paid out of the general estate so as to give the widow the homestead free.

This is a more difficult problem to solve. The two theories adduced are these: The plaintiff shows that under section 191, Revised Statutes 1899, where a creditor has a claim against an estate, which is secured by a mortgage, he may have his claim allowed against the estate, but must exhaust his security before he can share in the general assets. And that under section 3621, Revised Statutes 1899, the commissioners appointed to set out the homestead to the widow are required to also set out her dower, and that the dower must be diminished by the value of the homestead and if the homestead equals in value one-third of the whole estate, she shall have no dower. And that under section 2933, Revised Statutes 1899, a widow is entitled to one-third of the land owned by her husband at any time during the marriage, for life, freed from liability for her husband's debts, or under section 2939, Revised Statutes 1899, if the husband dies without any child or other descendants in being capable of inheriting, the widow is entitled to one-half of the real and personal property belonging to the husband at the time of his death, absolutely, subject to the payment of his debts. And that under sections 2941 and 2943, Revised Statutes 1899, the widow is required to make her election within fifteen months after the letters of administration are granted, whether she will take dower or a half interest, and failing to do so she shall be entitled only to dower.

From these premises the plaintiff argues that the secured debts must be paid first out of the security; that

whether she takes dower or a half interest, she is not entitled to more than one-third of the estate for life freed from debts if she takes dower, or one-half of the estate, absolutely, subject to debts, if she takes the half interest, and that the circuit court erred in giving her one-half of all the estate and the homestead too, and also in making the general estate pay the mortgage on the homestead.

On the other hand the defendants claim that section 191 applies only to the duties of the creditor and has no application to a case like this between the widow and the collateral heirs.

They further claim that dower is a right derived from common law, and that without the provisions of section 3621, a widow would be entitled to both homestead and dower, even if it exceeded one-third of the estate; that there is no provision of law which requires the value of the homestead to be deducted from the one-half of the estate that she is allowed under section 2939, and therefore she is entitled to both homestead and "election-dower," as it is termed in Newton v. Newton, 162 Mo. l. c. 187; that a homestead is an estate in land, which the wife cannot be deprived of without her consent, and that when the defendant signed the mortgage on the homestead she did so as surety for her husband, and, therefore, the primary obligation to pay the debt rested upon the husband and his land, and recourse thereon should be exhausted before the homestead could be looked to, and that this view is supported by the authorities and by the logic of Houf v. Brown, 171 Mo. 212, which holds that in estimating the value of the homestead the amount of the incumbrance must be deducted, and the homestead assigned in the equity of redemption.   The defendant further shows that where there is a mortgage on the land the rule is that the other property of the deceased must be taken to pay the mortgage before recourse can be had to the part set out as

dower for the widow, and that the same principle applies to a homestead.

Both contentions have their strong as well as their weak sides, and neither is correct in its entirety. There is a difference between homestead and dower. Dower comes to us from the common law. Homestead is purely a creature of the statute. The wife has a life interest in .dower, and a right of occupancy during life or widowhood in the homestead. The husband cannot cut her out of either without her consent. Election-dower (under sec. 2939, Revised Statutes 1899) is a creature of our statute and differs in many respects from dower allowed under section 2933. The principal difference is that ordinary dower is one-third of the estate, for life, freed from liability for debts, while election-dower is one-half, absolutely, subject to debts, which may turn out to be so great as to wipe out the election-dower absolutely, and as the widow is required to make her election within fifteen months after the letters of administration are granted, and as debts may be exhibited at any time within two years after such letters are granted and notice published, it can never be definitely known by a widow what, if anything, her election-dower will amount to.

But over and beyond all other considerations, the lawmakers, for the foregoing or other reasons, have seen fit to provide that the value of the homestead interest of the widow shall be deducted in allotting her dower and they have not seen fit to expressly declare that it shall be so deducted when the widow makes her election to take a one-half interest, absolutely, subject to debts, under section 2939. Some consideration has induced the lawmakers to leave this difference in the two cases, and as there is substantial ground for such a distinction, it is deemed wiser for the courts not to extend the rule of diminishing dower by value of the widow's interest in the homestead, to cases where she elects to take under section 2939. If this is not the true intention

of the lawmakers they can shortly and doubtless will, expressly, so extend the rule to such cases.

For this reason the circuit court was right in holding that the widow was entitled to homestead in addition to one-half of the other land.

This leaves for consideration the most difficult problem in the case. The wife joined the husband in placing a mortgage on the homestead. The husband owned the other property. The creditor could enforce the mortgage against the homestead, during the life or after the death of her husband, or during the life of the husband, the creditor could waive the security and look to the other property to collect his debt. But the creditor has done neither, and it is not the creditor's rights or remedies that are under adjudication here. The question here is between the widow, who expressly agreed that the homestead should be bound for the debt, and the collateral heirs of the husband, who, of course, stand in his shoes. Suppose the question had arisen during the life of the husband; suppose the creditor had attempted to foreclose his mortgage, could the wife have gone into a court of equity and compelled the husband to sell his other land to raise money to pay the mortgage and thus save the homestead? Would not a court of equity have answered her prayer with her express agreement that the homestead should stand for the debt? The case is essentially different from Smith v. Stephens, 164 Mo. 415, for there the mortgage covered the whole land, and as dower had not been assigned the widow she paid off the mortgage to protect her homestead and dower rights, and then asked that her dower be set off to her and that she have a lien on the balance of the land; while here the mortgage does not cover anything except the homestead, and the widow has paid nothing. The whole theory of the defendants is that the wife had an estate in the homestead during the life of the husband which she pledged as surety for the debt of the husband, and, therefore, after his death his

other land should be sold to pay the debt and leave the homestead free.

The wife has an inchoate right to occupy the homestead after her husband's death, if she survives him, and this right can not be taken away from her except by her own act. But to say that where a husband executes a mortgage on his homestead and his wife joins therein, her act in so releasing her rights therein puts her, or her inchoate right to the homestead, in the attitude of a surety, is going further than any adjudicated case has yet gone. The cases cited by the learned counsel for defendants are all cases where the mortgage was executed upon the whole land and the question was whether the dower land assigned to the wife should be sold until after all the balance of the land mortgaged was exhausted. There it was properly held that the dower land could not be looked to until all the balance was exhausted. The case at bar is very different. To make the cases parallel, the mortgage here would have to cover all the land, homestead as well as the other. If such was the case, there can be no doubt that the court would require the other land to be sold before the homestead could be touched. But no such condition is here present. The mortgage covers only the homestead. The plaintiff asks that unmortgaged lands be made to respond to the debt before the land that the plaintiff expressly agreed should be responsible therefor. The court has no power to thus transfer the mortgage from the mortgaged to the unmortgaged lands, unless defendant's theory of suretyship is well taken. No authority is cited to support the contention, nor has any been found. The wife's relation to the mortgage was rather that of releasing an inchoate right she had in her husband's property, than that of her, or her interest in the homestead, becoming surety for her husband's debt.

The judgment of the circuit court in so far as it directs the mortgage to be paid out of the sale of the property other than the homestead is erroneous, and is

reversed. The homestead was expressly charged by the husband with this debt, with the wife's consent, and it is primarily liable for it, and should answer therefor. For this reason the judgment of the circuit court is reversed and the case remanded to be proceeded with in accordance herewith.

All concur.