———o———

## St. Férdinand Loretto Academy, Respondent, *vs.* Charles Bobb, Appellant.

1. *Infant—Sustenance—Stepfather—Liability—In loco parentis.*—Merely by virtue of his marriage a man is not bound to provide for the children of his wife by a former husband, but if he holds them out to the world as members of his own family, he stands *in loco parentis* to them, and incurs the same liability with respect to them, that he is under to his own children.

*Appeal from St. Louis Circuit Court.*

*Lackland, Martin and Lackland,* for Appellant.

In the absence of special statutes to the contrary, the father in law is not obliged to maintain his step-children. (Schouler's Domestic Relations, 321 ; Commonwealth vs. Hamilton, 6 Mass., 273 ; Freto vs. Brown, 4 Mass., 675 ; Worcester vs. Marchant, 14 Pick., 510 ; Tubb vs. Harrison, 4 T. R., 118 ; 2 Kent Com., 192 ; Freto vs. Brown, 4 Mass., and in addition to the cases above cited, see the case of Gay vs. Ballou, 4 Wend., 403.)

The defendant never assumed any control over the step-daughter at all, and did not stand *in loco parentis.*

*Bakewell & Farish,* for Respondent.

If a man marry a widow, he is not bound to maintain her children, unless he holds them out to the world as part of his family, in which case he is liable. (Schouler's Domestic Relations, 77 ; Stone vs. Carr, 3 Espinasse, 1 ; Cooper vs. Martin, 4 East., 75.)

EWING, Judge, delivered the opinion of the court.

This was an action to recover a sum of money, which is claimed to be due for board and tuition furnished by plaintiff to one Adaline Frazier, the daughter of the defendant's wife. The defendant admits in his answer, that his said step-daughter Adaline was a pupil at said Academy for some time, but denies that he placed her there, or authorized any one to do so, and denies any indebtedness whatever.

The testimony tended to prove, that the daughter was at the Academy from March, 1866, to June 1867, as a pupil, that her mother was married to defendant when Adaline was about twelve years old, and that she lived in defendant's family with her mother, as a member of the family, from that time until her marriage ; that she was occasionally at home during her pupilage at the Academy ; that she inherited some money from her father's estate, which was received by her mother after her marriage with defendant ; that the Superior

of the Academy was informed by Adaline's mother, when she placed her at school, that she would receive said inheritance from her father's estate, out of which it was intended to pay for her tuition; that a part of the tuition bill was paid by her mother; that defendant was not consulted in reference to the education of his step-daughter, and took no control of it.

The court refused to give the following instructions asked by the defendant.

1. That if at the time Adaline was placed at the Academy, the contract between the Academy and her mother was, that the latter should receive board and tuition, and all necessaries at said institution, and that the same were to be paid for out of moneys coming to said Adaline from the estate of her father, the verdict should be for the defendant.

2. That if the said Adaline was the step-daughter of the defendant, he is not liable, unless he held the said Adaline out to the plaintiff as a member of his family at the time the contract was made.

3. That if the services set out in the petition were rendered at the request of the mother of said Adaline, and not at the request of the defendant, they will find for the defendant.

The court refused to give these instructions, and gave the following, namely:

"If the jury believe from the evidence, that Ada Frazier, the daughter of the defendant's wife, was a member of his family, and by him held out to the world as such: that defendant knew that she was placed at the school of plaintiff, and made no opposition thereto, that her education there and its expense were such as were reasonably suited to the means and social position of the defendant, that the services were rendered and the charge reasonable, they will find for plaintiff such amount as they shall find from the evidence to be still unpaid."

The only questions in this case arise upon the instructions given and refused. The first instruction asked by the defendant was properly refused, because it was not warranted by the

evidence. There was no evidence of an AGREEMENT between defendant's wife and the plaintiff, that the tuition and board of Adaline were to be paid for out of the moneys coming to her from the estate of her father, or that she was taken into the Academy on the faith of any assurance of payment from that source. But if the daughter had a fund or an estate of her own, whether it could have been subjected to the payment of the debt does not and could not arise in this case; this is an action at law, and the question is, whether after his marriage with the mother, defendant assumed such a relation to the daughter as to create a *legal* liability to the plaintiff for the necessaries furnished her. If he did, the law implies a promise to pay for them, if the facts supposed in the instructions are true; and the averment of the petition, that they were furnished at defendant's request, is sustained by proof of such liability, without an express promise of payment or an express contract to that effect before the step-daughter entered the Academy. The propositions submitted in the other instructions, are involved substantially in that given for the plaintiff, and they will be considered together.

There is some conflict between the earlier English decisions on this subject; some of them affirming and others denying any liability of the step-father for the education and maintenance of the children of his wife by a former husband; while the former are not quite agreed as to the grounds and principles upon which it rests. The doctrine on the subject however, seems to be well settled, upon the authority of subsequent cases in England, as well as the decisions of the courts of this country. There is no obligation on the part of the step-father to provide for the children of his wife by a former husband, by virtue merely of his marriage with their mother. He may refuse to provide for them, and could not be compelled to do so. The liability in such cases depends upon the relation he chooses to assume in reference to them. If he holds them out to the world as members of his family, he stands *in loco parentis*, and incurs the same liability with respect to them, that he is under to his own children. And the presumption

in such case is,that they deal with each other as parent and child, not as master and servant. This relation being established, the reciprocal rights, duties and obligations pertaining to it arise between them, the same as if he were their natural father.

In Stone vs. Carr, 3 Espinasse, 1, Lord Kenyon referring to cases which were supposed to establish a different doctrine, says there is no doubt if a man marry a woman having children by a former husband, he might refuse to provide for them, and could not be required to do it; but if he did not refuse to entertain them, and took the children into his family, he thereby stood in the place of a parent as to them, and having gone abroad and left them in the care of his wife, he should be held bound by her contracts made for their maintenance and education. And he adds; had their father died insolvent, it would not alter the case.

In Cooper vs. Martin, 4 East., 75, which was an action by the step-father against the step-son for expenses of his maintenance during his minority, which he promised to pay after he became of age, Lord Ellenborough, C. J., while holding that there was a good consideration for the promise, and that the action was maintainable, says in alluding to the case of Stone vs. Carr, *supra*, that however the case might be as between father-in-law and child, yet as to third persons the step-father was bound by the acts of his wife in providing for the children, whom he held out to the world as part of his family, that the step-father would have been liable to the tradesmen who supplied the children with necessaries by his wife's orders, while they were living with him as part of his family. *A quasi* parental relation may be established, and one may stand *in loco parentis* to another, and thus become responsible for the maintenance and education of step-children on the principle, that the child is held out to the world as part of his family. (Schouler's Domestic Relations, 321.)

To the same effect are the cases of Williams vs. Hutchinson, 3 Comstock, 312, 321, and Brush vs. Blanchard, 18 Ill., 46. See also Lantz vs. Frey, 14 Penn. St., 201. The ques-

tion, in the form in which it is presented in the case at bar, has not heretofore been passed upon by this court that I am aware of.

Judgment affirmed.　The other Judges concur.