CANOLE v. HURT et al., *Plaintiffs in Error.*

1. **Homestead:** DEATH OF WIDOW LEAVING MINOR CHILDREN. Under the homestead act of 1865, the right of the minor children to hold and enjoy the estate, is not affected by the death of the mother.

2. **Case in Judgment:** CHILDREN BY SECOND HUSBAND. Upon the death of J a homestead was set off to M, his widow, and R, their child, a minor. M afterward married H, and died leaving a minor son by H. *Held,* that the death of M did not interrupt the homestead right of R as long as he remained a minor. But on R attaining his majority, he and the son by H would inherit the estate from M as tenants in common.

*Error to Howard Circuit Court.*—HON. G. W. BURCKHARTT, Judge.

AFFIRMED.

*Herndon & Herndon* for plaintiff in error.

*S. C. Major* for defendant in error.

PHILIPS, C.—This is an action of ejectment, begun in 1879, by Robert Canole, a minor, by guardian, to recover of defendants a tract of land in Howard county containing 28 65-100 acres, more or less. Ouster laid on the 20th day of August, 1878. The answer tendered the general issue.

The case was tried on the following agreed statement of facts: That John Canole, at the time of his death, was seized in fee and possessed of the tract of land described in plaintiff's petition; that said John Canole left a widow, Mary Canole, and a minor child, Robert Canole, the plaintiff;

that Charles B. Canole is the guardian of said Robert Canole; that the defendant George W. Hurt is an infant, of whom Mark Jackman is the guardian; that said Mary Canole, widow, after the death of her husband, John Canole, married —— Todd, who left her; and the said Mary, without obtaining a divorce from said Todd, married defendant, Henry Hurt; and defendant George W. Hurt is her only child by said marriage with Henry Hurt; that the said land was duly set off to Mary Canole and her minor child Robert Canole, as a homestead under the provisions of the statute, and while said Mary was the widow of John Canole.

The order of the court setting out such homestead was here read in evidence, in words and figures following, to-wit:

"Mary Canole against David Pipes, administrator of the estate of John Canole, deceased.   In the Howard county court, February 9th, 1870.   David Peeler, John Walker and William H. Settle, commissioners, appointed at the last term of this court to set out to plaintiff a homestead, present their report, and it appearing to the court that the tract of land described in the petition and in the said report filed, was valued by said commissioners at $860, and that sum is less than the value of a homestead allowed by law, and that said commissioners have set out the whole tract as a homestead for said plaintiff and her child, Robert Lee Canole, according to the provisions of the statute in such cases, it is, therefore, ordered by the court that the report of said commissioners be, and the same is approved and confirmed and ordered to be recorded, and the tract of land described therein set out to Mary Canole and Robert Lee Canole as a homestead, according to the statute aforesaid."

It was further admitted that the defendants were in possession of the land in controversy at the commencement of this suit, and are now in possession, and that the value of the monthly rents is $5.   There was no other evidence.

The court found the issues for the plaintiff, and the defendant brings the case here on error.

The question for discussion arising on the agreed statement of facts has not been directly decided in this State, though the principle involved has, in effect, been settled. The homestead claim represented arose under the statute of 1865. The fifth section of the homestead act reads as follows:

"If any such housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead, to the value aforesaid, shall pass to and vest in such widow or children, or if there be both, to such widow and children, without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime; and such widow and children, respectively, shall take the same estate therein of which the deceased died seized; provided, that such children shall, by force of this chapter, only have an interest in such homestead, until they shall attain their majority, and the probate court having jurisdiction of the estate of such deceased housekeeper or head of a family, shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto."

From this section one thing is clear to my mind, and that is, the legislature did not intend to secure the privileges and benefits of the homestead exemption and estate to any other person or persons than the widow and minor children of the "head of the family" who died seized of such homestead. The manifest object was to preserve to the head of the family during his life the enjoyment of the home property as a means of shelter and protection, as also a means of better securing the unity of the family. Its further purpose was, upon his death, to devolve the estate upon his widow and minor children just as he held it, and for the same beneficent end—that of keeping his widow and dependent children together by affording to them a common shelter and a common source of subsistence.

No other children than his minor children are admitted to the homestead as such. No child of the wife, by marriage anterior or subsequent to her coverture with the owner of the estate, has any right or claim to enter into the homestead and share it with his children, so long as they are minors. Any other construction would thwart the spirit and intent of the statute, and let in aliens to the head of the family to share with his offspring the home which the legislature declared shall be enjoyed by his widow in perpetuity and his offspring during minority.

True, it is that under this statute the widow took in fee, and at her death the fee title would descend to her heirs and not to her husband's. *Skouten v. Wood*, 57 Mo. 380. So that if at the time of her death there had been no minor child of the husband, no doubt but her children, whether of lawful or unlawful wedlock, would take the estate, in fee, as of the mother, as tenants in common.

But where there is a minor child, as in this case, of the father from whom comes the homestead, while the fee title is in the widow, the minor child is entitled to hold with her during the minority, and neither she nor those claiming under her, can oust or resist the right of possession of such minor.

Judge Napton, in *Skouten v. Wood, supra,* while the point was not directly involved, nevertheless expressed his view of this question as follows: "Supposing her death to occur before the minor children (where there are any) attain majority, it would be a serious question as to where the title goes; but I suppose it would go to the surviving minor children and on their majority to the heirs of the deceased." By the expression "to the heirs of the deceased" he meant, evidently, the heirs of the deceased widow. In that case the court held, that as the section in the statute of 1865, under consideration, was copied from the homestead law of the state of Vermont, the legislature adopting it are supposed to have been familiar with the construction placed upon the act by the supreme judicial department of that

state, and by a well recognized rule of interpretation such construction came with and was, in effect, adopted by our legislature when they re-enacted the statute. In *Keys v. Hill*, 30 Vt. 760, decided in 1858, long anterior to the adoption of the homestead law now in question, the supreme court of that state determined the character and quality of the estate taken by the widow and heirs, and the right of one to hold it in severalty. The proposition was sought to be established in that case that the widow and children held as tenants in common, with all the incidents and rights which under the general law of real property inhere to such estate. Under the construction contended for in that case by the one party, as here, the homestead estate could be cut into as many "distinct equal fragments" as there were children, and taken by each in severalty, "though the widow might have no other place or means of shelter, habitation or support." This the court held was not to be maintained. But it said : " We think the clear design of the law is to continue the homestead entire, as the home of the widow and children constituting the family at the decease of the husband and housekeeper or head of the family, and that no right of the children becomes operative to sever or divert such homestead from full enjoyment and occupancy as the family home, so long as the widow, or widow and children, see fit to continue it as such family home. In other words, we think the homestead continues to stand in the same relation to the family of the deceased for the purpose of a home and support, upon and after his decease, as it did before and up to the time of his decease." As the correlative of this construction it must follow that as the children cannot oust nor sever, as against the widow, neither can the widow, while living, hold to the exclusion of the children nor in severalty.

The practical operation of an effort to enforce the rule contended for by appellant will demonstrate its invalidity. It will not, I presume, be contended by the learned counsel for plaintiff in error, that the death of the mother termi-

nated, or in any degree lessened the estate of the minor under the homestead law. This child is equally interested with the after-born child in the fee estate inherited from the mother. So if there be a right of admission to the immediate possession of the premises by the after-born child, to what share or interest is he entitled? It cannot be an equal share with the first child, for he holds a homestead interest in addition to the undivided half interest with the later child in the fee under the mother. As the homestead interest cannot be severed, but must be held and enjoyed in common as an entire estate, if the last child could maintain ejectment it could only be to the extent of being let in to hold, as of the entirety, with the beneficiary of the homestead, when it has no right whatever in the property under the homestead law.

The construction of this act must, therefore, be that the right to hold and enjoy the estate was in nowise interrupted by the death of the widow. The first child, during its minority, holds not by inheritance but by virtue of the homestead law. And as the absolute fee, which the widow took, was burdened with the homestead interest and right of the first child, and as the after-born child is not claiming, nor indeed can claim, any right under the homestead act as such, but solely by the law of descent from the mother, it takes an interest in the fee, but burdened with the paramount right to the possession of the first child during its minority. When the first child shall have attained its majority the homestead estate will be at an end, and both children will then, and not before, as heirs of the common mother, take from her the estate in fee as tenants in common.

It follows that the conclusion reached by the circuit court was for the right party, and its judgment is affirmed. All concur.