# CHRISMAN v. LINDERMAN et al., Appellants.

### Division One, March 28, 1907.

1. **FEE SIMPLE DEED: Part Payment: Mistake.** It would be an intolerable reproach to the law to allow a purchaser, who has received a fee simple title absolute, to take the whole estate under the guise of paying for a part only, when such result was produced by an honest mutual mistake of fact, or an honest mistake of mixed law and fact, or a mistake of both or either born of the fraud of the purchaser. Where the purchaser at the administrator's sale obtained the fee simple title to decedent's homestead, under the belief and understanding that it was subject to the dower of the remarried widow, and he did not pay for that, he must be compelled to do so.

2. **DOWER** being a cherished and immediate jewel of the common law, all doubts as to its destruction by statute are to be

resolved in its favor. Nothing except a plain mandate of the statute, or a statutory command deduced by necessary implication, will suffice to destroy dower.

3. ———: Homestead: Remarriage: Sale. Where the widow had a homestead in all the land her husband owned at his death, and she remarries, and the land is sold for his debts, her dower is not thereby extinguished; and the sale of the land by the administrator under an order of court to pay debts, does not convey to the purchaser her dower.

4. ———: ———: Merger. The dower does not merge into the wife's homestead. The law will not force a merger contrary to the interest of the widow.

5. ———: ———: ———: Statute: Assignment. The statute does not by its terms destroy dower where the homestead comprises all the real estate of which the husband died seized. It says that "no dower shall be assigned to such widow." There is a difference between her dower estate, and its assignment. Dower is an estate vested by law; assignment is a remedy for segregating or marking out the estate. The Homestead Statute forbids the assignment of dower where upon assignment of homestead the homestead is greater than one-third of the real estate; but where the widow loses her homestead by remarriage, she can then assert her claim to dower. That estate was existent while the homestead existed, but its assignment was suspended because the homestead entirely overlapped it.

6. ———: ———: ———: ———: Homestead Law of 1895. The Homestead Statute of 1895, by the language employed, makes the remarriage of the widow an annihilation of her homestead only, and the courts will not by construction extend it to the destruction of her dower also.

Transferred from Kansas City Court of Appeals.

REVERSED.

*N. A. Franklin* for appellants.

A widow who remarries does not lose dower in her former husband's lands. West v. McMullen, 112 Mo. 405; Westmyer v. Gallenkamp, 154 Mo. 28. But does a widow who remarries thereby lose and forfeit

dower in lands of her former husband which was his homestead, and the only lands he possessed? A widow is endowed with the one-third part of all the lands whereof her husband died seized and possessed of an estate of inheritance, and the husband can sell his homestead subject to his wife's inchoate right of dower. R. S. 1899, secs. 2933, 2935, 2936; Casteel v. Potter, 75 S. W. 597; Gladney v. Sydnor, 172 Mo. 318; Phillips v. Presson, 172 Mo. 24. Take a case like that of Gladney v. Sydnor, 172 Mo. 318, where it is specifically held that, under the homestead law of this State as amended in 1895, a homesteader has a vested estate in his homestead property, and can sell the same subject to his wife's inchoate right to dower; if the husband by his deed can defeat both homestead and dower, then his widow is left in a worse condition than if no homestead law had ever been passed by the Legislature. Can it be that the Legislature by the homestead law of 1895 intended to defeat the widow's rights both to her homestead and dower at the same time? If the construction put on the pleadings by respondent be sound, then that very thing is accomplished, if the homesteader's widow remarries. The last case cited specifically decided that the widow has the inchoate right to dower in her husband's homestead; if that right is not complete on the death of the homesteader, when does it become consummate? In the case of Phillips v. Presson, supra, the same thing is decided in the same way. In that case it is held (citing statutes) that a widow who had deeded the land had three cognate rights thereto, to-wit: quarantine, homestead and dower. It can surely make no difference that the homestead right of the minor children was stronger than the dower rights.

*Higbee & Mills* for respondent.

The widow took the homestead, the entire homestead in this case, during her life or widowhood. If

the homestead equal or exceed one-third of the real estate, the widow has no dower. Burgess v. Bowles, 99 Mo. 547; Poland v. Vesper, 67 Mo. 727. Dower becomes consummate and is assigned according to the law in force at the husband's death. Carey v. West, 139 Mo. 174; Broyles v. Cox, 153 Mo. 251. "The object of the law was to secure a home for the widow." To insure her support the law gave the widow the entire homestead in lieu of one-third. "In such case she can have no dower." Bryan v. Rhoades, 96 Mo. 489; Gore v. Riley, 161 Mo. 245. Prior to 1895, this was a life estate. Our lawmakers, however, became jealous of second husbands, and in their wisdom provided that when the widow remarried, she forfeited her homestead. She then had another husband to support her. And no statute provides, nor does the policy of the law require, that she shall have dower in lieu of the homestead she voluntarily forfeits by her remarriage. Having no dower, the widow had no quarantine. Casteel v. Potter, 75 S. W. 598, 176 Mo. 84. Linderman agreed to pay $1500 for the fee; he induced plaintiff to believe that Mrs. House had dower in the land; he got a deed which conveyed the fee. He immediately discovered this fact, retained the deed and refused to pay the $254.25, which it was mutually agreed was the value of the supposed dower interest. This is a plain case of mutual mistake of fact as to the title to be conveyed, induced by appellant's misrepresentation. It will not alter the complexion of the case to call it mutual mistake of law and fact. It was a mutual mistake as to a title, which is a fact. When the mistake was discovered he refused to pay the full price of $1500, as agreed, and elected to hold title to the whole fee. Is it possible the plaintiff shall be obliged to sell the whole for what both parties intended should be the price of part only? Will appellant be permitted to retain the whole title with one hand and with the other withhold the price of the part he did not bargain to buy nor the

plaintiff to sell? By electing to retain the fee he affirms the sale of the whole title, and equity will compel him to pay the agreed price therefor. Griffith v. Townley, 69 Mo. 13; Smith v. Patterson, 53 Mo. App. 72; Mich. Buggy Co. v. Woodson, 59 Mo. App. 558; Corrigan v. Tiernay, 100 Mo. 276; Summers v. Coleman, 80 Mo. 488. Equity will relieve against mutual mistakes as to legal rights. 1 Beach Mod. Eq. (1 Ed.), sec. 38; Bisp. Eq. (2 Ed.), secs. 187, 188.

LAMM, J.—Anthony Wishon departed this life in Putnam county in 1898, leaving behind him a widow (Thirsey), a homestead and debts, but neither will nor child. The public administrator of said county, one Chrisman, under orders of the probate court, took upon himself the burden of administering upon Wishon's estate. The widow remarried—her new yokefellow being Menzo House.

Presently thereafter said administrator commenced proceedings to sell the homestead to pay debts, which proceedings ripened into an order of sale, a sale and an approval thereof and an administrator's deed in 1900—defendant Linderman becoming the purchaser at an expressed consideration of $1,254.75. It seems the homestead comprised sixty-five acres of land, and it stands conceded that its value, as agreed on between Chrisman and Linderman, was $1,500.

After the administrator's sale and deed a squabble arose between Chrisman, Linderman and the former widow, Mrs. House, over her right to dower; and this suit in equity resulted, whereby the administrator seeks to recover of Linderman $245.25, a sum said to represent Mrs. House's dower right, it being the difference between the sum paid by Linderman to the administrator and said actual value of the land. The suit resulted in a decree in favor of the administrator in said

202 Sup—39

sum, which amount was made a charge upon the land, and from that judgment Linderman appealed to the Kansas City Court of Appeals.

On the theory the title to real estate was involved, that court transferred the cause to this court.

Three petitions were filed by plaintiff. Defendant Linderman lodged demurrers against the first two, having for grounds that they did not state facts sufficient to constitute a cause of action. These demurrers were successively sustained. Thereat plaintiff filed a second amended petition. This in turn was challenged by a pleading called in the record a motion to strike out. The motion, however, is a dual pleading. In so far as the grounds of the motion aver a departure from the original petition, it may be technically considered a motion to strike out. But the motion did not stop there; it took a further step and, assuming the office of a demurrer, challenged the petition as not stating facts sufficient to constitute a cause of action. Whether it be deemed a motion or demurrer, it was overruled and defendant excepted, and stood on his motion.

In this court it is argued by defendant's learned counsel that the second amended petition states no cause of action. It is also argued that if it states any cause of action, it is a new and different cause of action from the one stated in the original petition—in other words, that the second amended petition, placed side by side with the original petition, shows a departure.

As we interpret plaintiff's contention, it is, first, that there is no departure; and, second, that if departure there be, such departure arises in the first amended petition and not in the second amended petition—that is that the two amended petitions state the same cause of action; and if any vice of the character insisted upon by defendant exists, it can be seen only when the first amended petition is placed side by side with the original petition. And plaintiff goes further and seeks

to avoid the force of defendant's claim of departure by insisting that when a demurrer was lodged against the first amended petition, the effect of that form of pleading was to waive the departure, and, said departure being waived, the right to insist upon it (once lost) can not be revived.

These questions of pleading are learnedly discussed by counsel, pro and con; but in the view we take of the case, they are not decisive, and therefore need not be considered. .

Our notion is that the turning point in the case is in defendant's main contention, to-wit: that the petition states no cause of action and that the court had no jurisdiction to enter the decree it did. The ultimate question involved in this contention may be formulated as follows: If a widow be vested with a homestead on the death of her first spouse (that being all the real estate of which he died seized), does she lose, not only her homestead, but also her dower, by a remarriage?

In order to show how the foregoing question arises on the record, it will be well to squeeze into a nutshell the constitutive elements of plaintiff's cause of action as set forth in a voluminous bill. Thus:

After averring the facts hereinbefore set forth, it is alleged that on the death of Wishon his homestead vested in his widow, Thirsey, during her lifetime or widowhood, as her homestead, and that she had no dower therein; that she continued to occupy the homestead after the death of Wishon until she married Menzo House; that by her marriage she forfeited her homestead and all title in and to said premises; that after the order of sale by the probate court, and prior to the purchase by Linderman, he and the administrator opened negotiations for the purchase of the land at private sale under the terms of the order; that Linderman believed, or pretended to believe, that Mrs. House had dower in the land, and stated such to be a fact to the plaintiff; that the widow did the same and

was represented by an attorney who gave similar assurances; that plaintiff did not have the advice of counsel and believed said representations; that as the result of said negotiations, and moved thereto by said representations, it was agreed between plaintiff, Linderman and Mrs. House that the land was worth $1,500 and Linderman would pay that price; that the interest of the estate of Anthony Wishon in the land was valued at $1254.75, and the pretended dower at $245.25, and Linderman was to pay the first-mentioned sum to plaintiff and the latter sum to Mrs. House, she and plaintiff agreeing to convey said respective interests to Linderman; that plaintiff reported the sale, the report was approved and he made his deed in accordance with the agreement, which deed conveyed all the interest and estate of deceased in the premises; that it was understood between plaintiff and Linderman that plaintiff was conveying and Linderman was acquiring by that deed the fee simple title, subject to the dower; but this was a mistake of fact, superinduced by plaintiff's ignorance and by the aforesaid representations; that, in truth and in fact, plaintiff sold and conveyed the fee simple title absolute, subject to no dower interest—plaintiff thereby conveying and Linderman thereby receiving a greater interest than plaintiff intended to convey, or than Linderman pretended to believe he was receiving; that if Linderman was honest in his representations, then the mistake was a mutual mistake of fact; but, if dishonest in his representations and beliefs, then he intentionally practiced a fraud upon plaintiff; that at once upon receiving plaintiff's deed Linderman turned about and snapped his fingers at Mrs. House, claiming she had no dower; but that he had acquired the full fee from plaintiff by his administrator's deed, and he thereupon refused to pay the widow said sum; that defendant is responsible for plaintiff's mistake of fact relating to said dower and his belief in its existence, and thereby secured the fee

simple title to said premises for the sum of $1,254.75, instead of for $1,500, which by the contract of sale he agreed to pay, and thereby wronged the estate of Anthony Wishon out of the difference. Wherefore, plaintiff prays judgment for said sum, and that the same be declared a lien, etc.

I. The foregoing sufficiently states the averments of the second amended petition; and when it is further stated that the case passed off below in such form that the allegations of the petition are to be taken as true because defendant stood mute, while plaintiff stated his paper case to the foregoing effect, it will be seen that the matter is sufficiently developed to show that the question controlling the very right and justice of the case is whether or not Mrs. House has dower. If she has dower, then plaintiff is intermeddling and ought not to recover; for Linderman must settle with her. If, on the other hand, she has no dower, then plaintiff should recover; for it would be an intolerable reproach to the law to allow a purchaser to take the whole estate under guise of paying for part only, when such result was produced by an honest mutual mistake of fact, or an honest mistake of mixed law and fact, or a mistake of both or either kind born of the fraud of the purchaser—and so it is written. [1 Beach, Mod. Eq. (1 Ed.), sec. 38, p. 37; Griffith v. Townley, 69 Mo. 13; Corrigan v. Tiernay, 100 Mo. 276; Summers v. Coleman, 80 Mo. 488; Smith v. Patterson, 53 Mo. App. 66; Needles v. Burk, 81 Mo. 569.]

II. The question presented is *res integra;* and at the very threshhold of its consideration it is pertinent to inquire what is the correct judicial attitude toward dower. To ascertain that attitude we may give heed to the pertinent maxims of the law; for, "A maxim," says Coke, "is so called because its dignity is chiefest, and its authority the most certain, and because it is universally approved by all." [Coke, Litt. 11 a.]

Again he says, "A maxim is a proposition to be of all men confessed and granted without proof, argument, or discourse." [Id., 67 a.] "Maxims," says Sir James Mackintosh, "are the condensed good sense of nations." The rule (*i. e.*, the *maxim*) measuring the force of legal maxims is: "In default of the law, the maxim rules." (*Regula pro lege, si deficit lex.*) Referring to dower, the maxims are: "The law favors dower; it is a reward of chastity, therefore it is to be preserved." [Coke, Litt. 31a.] Again: "In doubt the response is in favor of dower, liberty, innocence, of the possessor, of the debtor, and of the defendant." [Brown Law Dic. Appendix. *In dubio pro dote,* etc.] Again: "Law favoreth life, liberty, dower." [14 Bac. 345.] Again: "Where there is marriage, there is dower." [Bract. 92.] And the converse: "No marriage, no dower." [4 Barb. (N. Y.) 194.]

It may, accordingly, be justly said, we think, that the correct judicial attitude towards dower is this: Dower, being a cherished and immediate jewel of the common law, preserved for and presented to us in a statutory setting, all doubts are to be resolved in its favor; courts will not allow the right of dower to be wasted and frittered away in piecemeal by sour or austere construction, by overnice refinement in gloss. In short, nothing except a plain mandate of the statute, or a statutory command deduced by necessary implication, will suffice to set dower to one side. And this is so because dower, as seen above, keepeth excellent company in the law, to-wit: the company of life and liberty (the three abiding together in favor). So that, the law lifts the light of a comfortable countenance thereon out of tender regard for the widow.

III. Nevertheless, dower may be lost. For instance, it being "a reward of chastity," it was lost at common law by the wife's adultery. Thus speaketh the oracle of the common law in that behalf: "A woman leaving her husband of her own accord, and

committing adultery, loses her dower, unless her husband takes her back of his own accord." [Coke, Litt. 32 b.] Declarative of the common law in that regard is our statute. [R. S. 1899, sec. 2953.] So, too, a woman is declared not to be endowed in case of a divorce secured by her husband for her fault or misconduct. [R. S. 1899, sec. 2947.] Moreover, she may lose her dower right on becoming *sui juris* by acts amounting to an estoppel *in pais*. [Hart v. Giles, 67 Mo. 175.] Furthermore, she may lose her dower by the Statute of Limitations. [Long v. Stock Yards Co., 107 Mo. 298; Null v. Howell, 111 Mo. 273.] She had no dower at common law in the war castle of her lord; hence, by analogy she has been held to have no dower in a railroad right of way—the public use in that regard standing as and for a warlike castle. [Venable v. Railroad, 112 Mo. 103; Chouteau v. Railroad, 122 Mo. 375.] She may bar her dower during her marriage by deed, executed jointly with her husband (R. S. 1899, sec. 2946), and it goes without saying that she may convey away her dower after she becomes discovert. Absent any words evincing a contrary intent, at common law a devise of real estate to her in her husband's will was in addition to dower. [Schorr v. Etling, 124 Mo. 42.] But the statutory rule is otherwise, and unless she by renunciation of the will avoids a devise of real estate made to her by the will of her husband, she is barred of dower by such devise. [R. S. 1899, sec. 2949.] Certain options are given to her by the statute and she may elect to take a certain share in her husband's estate under given conditions in lieu of dower—all of these elections, be it noted, involving a choice in her for the possible betterment of her estate. [R. S. 1899, secs. 2939 to 2945, inclusive.] So, too, her dower may be barred by an antenuptial contract entered into understandingly and supported by an adequate consideration. [R. S. 1899, sec. 2950.]

But it is not amiss in the consideration of the case

at bar to note that in the absence of election, convey-
ance or other bar, as aforesaid, the manifest intent of
our statute on dower, as read in the lines and between
the lines—that is, in the letter as well as in the very
soul of the statute itself—is that the widow's common
law right of dower is to be kept inviolate; and that
right is set forth in the first section of the Dower Act
(R. S. 1899, sec. 2933), thus: "Every widow shall be
endowed of the third part of all the lands whereof her
husband, or any other person to his use, was seized of
an estate of inheritance, at any time during the mar-
riage, to which she shall not have relinquished her
right of dower in the manner prescribed by law, to
hold and enjoy during her natural life." [See Rev.
Laws, 1825, vol. 1, p. 332.]

In fact, dower seems to be dear as the apple of
its eye to Missouri statutory law, as it was to the com-
mon law of our ancestors; and so it is provided that:
"No act, deed or conveyance, executed or performed
by the husband without the assent of the wife, evi-
denced by her acknowledgment thereof, in the manner
required by law to pass the estate of married women,
and no judgment or decree confessed or recovered
against him, and no laches, default, covin or crime of
the husband, shall prejudice the right and interest of
the wife provided in the foregoing sections of this
chapter,"—i. e., chapter 21 on Dower. [R. S. 1899,
sec. 2946.]

We are now asked to hold that a widow's dower
right, a right she may guard and re-establish by a suit
in equity during the lifetime of her husband, a right
granted her, as seen, by the common law from a time
when the memory of man runneth not to the contrary,
and which (jealously preserved in statutory law dur-
ing the whole life of the State of Missouri) the courts
are quick to see and astute to aid, is lost by remarriage
in every case where the real estate of which her hus-
band died seized is of such modest amount that it also

constitutes a homestead; for this conclusion the learned trial judge felt constrained to draw by the interpretation placed by him upon the provisions of the homestead statute, presently to pass under review.

IV. The material provisions of the statutes relating to homesteads, referred to in paragraph three of this opinion, are sections 3620 and 3621, Revised Statutes 1899. Section 3620 reads as follows:

"If any such housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead to the value aforesaid [$1,500] shall pass to and vest in such widow or children, or if there be both, to such widow and children, and shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime, until the youngest child shall attain its legal majority, and until the death of such widow; that is to say, the children shall have the joint right of occupation with the widow until they shall arrive respectively at their majority, and the widow shall have the right to occupy such homestead during her life or widowhood, and upon her death or remarriage it shall pass to the heirs of the husband; and the probate court having jurisdiction of the estate of the deceased housekeeper, or head of a family, shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto."

Section 3621 reads as follows:

"The commissioners appointed to set out such homestead shall, in cases where the right of dower also exists, also set out such dower, and they shall first set out such homestead, and from the residue of the real estate of the deceased shall set out such dower, but the amount of such dower shall be diminished by the amount of the interest of the widow in such homestead; and if the interest of the widow in

such homestead shall equal or exceed one-third interest for and during her natural life, in and to all the real estate of which such housekeeper or head of a family shall have died seized, no dower shall be assigned to such widow.''

It will be seen that by section 3620 the homestead right passes to and vests in the widow or minor children, or in both, if both there be. It continues for her benefit during her natural life unless she remarries. If she remarries, her homestead ceases. [McKee v. Stuckey, 181 Mo. l. c. 722.]

It will be seen that under section 3621, supra, where both homestead and dower exist, the commissioners appointed to set out homestead shall also set out dower. But the two estates are recognized as somewhat akin to each other. Hence, it is provided that the homestead shall be set out first and that the dower shall be diminished by the interest of the widow in the homestead and that ''no dower shall be assigned to such widow'' when the homestead equals or exceeds one-third interest for and during her natural life in and to all the real estate of which the housekeeper or head of the family died seized.

Our statutes establishing and setting metes and bounds to the purely statutory estate of homestead being in the foregoing terms, the argument of plaintiff's learned counsel runs plausibly and shrewdly in this wise: the real estate of Wishon was his homestead —no more, no less. Now, the statute vests that homestead, *eo instanti* and *will ye, nill ye,* on his death in his widow; *ergo,* by operation of law her dower was swallowed up and lost in her homestead (*i. e.,* all her eggs were placed in one basket). She marries House; *ergo,* her homestead is lost; and, her homestead being lost, all is lost.

But we are not persuaded that such argument is sound, nor that the conclusion drawn is sound. This is so, because:

(a) If the dower estate was merged into the homestead estate, then there would be great force in the argument that if the homestead was lost, such loss took with it the dower estate. But the rule at law relating to merger is stated to be: "That where a greater estate and a lesser coincide and meet in one and the same person in the same right, without any intermediate vested estate, the less is immediately annihilated, or, in law phrase, is said to be merged, that is, sunk or drowned, in the greater; and the same rule applies to the union of a legal estate with an equitable estate or interest, the latter being thereupon extinguished. After merger the greater estate, still subsisting, continues of precisely the same quality and extent of ownership as before, while the lesser with its characteristics is extinct." [20 Am. and Eng. Ency. Law (2 Ed.), 588.]

The same standard authority states the rule relating to merger in equity as follows: (*Id.*, 590): "In equity the legal rule of merger is not regarded as inflexible, and the question whether the doctrine of merger applies or not is determined by the intention of the party in whom the estates unite, provided that his intention is determined by the party's expressed declaration, or, where there is no declaration, or the party is not capable of electing as to merger, intention will be presumed in accordance with his interests as disclosed by an examination of all the circumstances of the case."

It has been held that in equity estates are kept distinct when the interest of either party requires it; that merger is not favored in equity, and never takes place contrary to the intention of the parties, or the requirements of justice. [See a learned note on page 1234, vol. 4, Current Law. To the same effect are Hospes v. Almstedt, 83 Mo. 473; Sater v. Hunt, 66 Mo. App. 527; Danhouse's Estate, 130 Pa. St. 256.] In Wallace v. Blair, 1 Pa. St. 75, it was held: "As the

merger is for the benefit of him in whom the two estates unite, it will never take place when it is against his interest, or when it is most for his advantage to keep the charge alive." [See McLeery v. McLeery, 65 Me. 173; Jameson v. Hayward, 106 Cal. 682; Wettlaufer v. Ames, 133 Mich. 201.]

Applying the doctrines of merger to the facts in judgment, it cannot be said there was any merger of the homestead and dower interests. There being no expressed intention of the widow and the law alone creating the condition present, the law will not force a merger contrary to the interest of the widow. We do not have to decide that the homestead estate is superior to the dower estate for the purposes of merger. Such estate may in a given instance be superior in quantity, but it would seem to be inferior in quality, because the homestead is determinable by marriage, whereas dower is determinable by death. The two events being dissimilar in essence, the one rests in caprice, the other in necessity. All we are obliged to hold, and what we do hold, is that it was not to the interest of the widow to force a merger of the two estates which met in her, and, hence, no merger will be presumed.

(b)    But plaintiff insists the homestead statute, *ex vi termini*, destroys dower where the homestead is greater than one-third of the real estate of which the husband died seized. But we do not so read the statute. It does not say (*in totidem verbis*) that in such case the widow shall have no dower, or that her dower is lost. The language of the statute is (sec. 3621, supra) that under such circumstances "no dower shall be *assigned* to such widow." Now, dower is an estate vested by law, inchoate during the life of the husband and cast upon the widow upon his death; while the assignment of dower is defined thus: "The assignment of dower is ascertaining a widow's right of dower by laying out or marking off one-third of her

deceased husband's lands, and setting off the same for her use during life.'' [Black's L. Dic.] Thus it appears that dower is one thing and the assignment of dower is essentially a different thing. One is an estate, the other smacks of the remedy for segregating the estate. When the statute, therefore, says that no dower shall be assigned, it falls far short of saying that the widow's right of dower is lost or drowned in a greater estate.

In our opinion all the statute means is this: given a homestead greater in extent than common law dower, then the courts shall remain passive and refuse to assign, that is, admeasure and mark off the dower interest while the homestead exists in the widow. To mark out dower in the homestead in such case would be a vain and useless thing. Albeit, the dower right is left, but left latent merely—covered up, as it were, and its assignment cannot be enforced in the homestead while the widow's homestead exists. But, if we may be allowed a trope, as the stars come out when the sun goes down, so when such homestead right disappears, the right to assignment of dower reappears—suspended during widowhood, it revives again on remarriage, at the precise time assignment of dower would have any meaning or vitality in the case in hand. Certain it is that a woman takes dower in accordance with the law in existence when her husband dies. Certain it is that the Legislature may legislate in regard to dower. But, as said, our Dower Statute should not be held as subject to repeal by anything short of express repeal, or repeal by inexorable implication. The Homestead Statute and the Dower Statute are not antagonistic to each other, but they must be construed together. No provision in either should perish by construction unless there is no reasonable escape from such construction. In the case at bar the provisions of the Dower and Homestead statutes pertinent to the issues may be construed harmoniously

with each other, and we adopt the construction that dower continues to exist in the homestead, but the widow's right to its assignment was suspended during the existence of a homestead estate entirely overlapping it.

(c)   But it is further argued by plaintiff's counsel that the homestead statutes have been construed as contended by them, and adversely to the foregoing view. Plaintiff's counsel put their finger on several cases which they say support their view; for example, Bryan v. Rhoades, 96 Mo. 485. A close reading of that case will show that the exact point here was not in judgment there. It is said there that "if the widow's interest in the homestead equals or exceeds, in amount, dower in the entire estate, then she can have no dower." The action was for the assignment of dower and the setting off of a homestead, and all necessary for the court to say, and what it meant to say, was that in such condition of things there can be no assignment of dower. We are cited to the case of Gore v. Riley, 161 Mo. 238. In that case an attempt was made to have us say that as the minor children had an interest in the homestead with the widow, each was entitled to a certain or definite part for the time each should have it, and that such interest has a fixed value; so that, when the homestead was set off to the widow and minor children, the widow's interest should have been computed as diminished by the interests of the minor children and enough more land added to her homestead interest (as computed) to have made up one-third of value in the whole real estate. For reasons suggested by BURGESS, J., this court refused to follow that lead, and, *arguendo*, Bryan v. Rhoades is quoted from. There is nothing in that case that militates against the conclusion we have heretofore announced. The same may be said of the other cases relied upon.

As tending to show the astuteness which courts evince in protecting the interests of widows, attention may be called to a line of decisions construing section 3621, supra, wherein the widow elected under the Dower Act to take a child's part in lieu of her common law dower; and these cases, when closely read, will be found by parity of reasoning to sustain the argument advanced in this opinion. For instance, in Adams v. Adams, 183 Mo. 396, it was held that a widow who has elected to take one-half of the estate of her deceased husband absolutely, subject to his debts, is entitled in addition to a homestead in the other-half of the land. In other words, section 3621 was held to apply solely to common law dower and not to the estate which the widow may elect to take in lieu of dower, which has been aptly called "election dower." To the same effect is McFadin v. Board, 188 Mo. 688, and Quail v. Lomas, 200 Mo. 674. See, also, Casteel v. Potter, 176 Mo. 76.

(d) Finally it is argued that when the Legislature in 1895 (Laws 1895, pp. 185-6) amended the homestead law so as to make the widow's homestead right determinable on her remarriage, the gist of the legislative object was hostility to the remarriage of widows; and the argument seems to be that the courts should further that object by making the punishment for her remarriage as severe as possible, and, to that end (*in terrorem*), should strike down both dower and homestead. Whether the Legislature was actuated by so ungallant a motive, or no, is not for us to inquire or decide. Suffice it to say that courts get at the legislative intent through the language employed to evidence that intent. The language employed is alone directed to an annihilation of the homestead estate. It may have been in the legislative mind that a new object of adoration should not be installed in the old home—that the children of a decedent sharing that home should not be ruled over by the alien hand of a

stepfather, who, peradventure, might waste the substance of the estate and render the widow less able to support and educate the children of decedent, or exhaust the fountain of love singular to them. Courts have not hesitated to enforce provisions of wills making a devise to the widow void in case of her remarriage. See Dumey v. Schoeffler, 24 Mo. 170; and many other cases might be cited to the same effect, so that, in accordance with the legislative will, courts should enforce the present homestead law whereby the widow loses her homestead in case of her remarriage. But, while not lagging behind, we will not be hurried by construction into running in advance of the written law; and it will be time enough to hold, when the Legislature says so without equivocation or doubt, that a widow loses her dower right by remarriage. That is to say, if a widow is to be thus stripped because (peradventure) she pays a tribute to the virtues of her first husband by seeing his similitude in a second, or, *contra*, because (as sourly put, in substance, by Doctor Johnson) she allows Hope to triumph over Experience by taking a second, then, such effect must be produced by a stroke of legislative, rather than judicial, power.

The widow of Wishon has dower in the real estate in question, and, therefore, plaintiff as administrator of the estate was not entitled to recover the value of that dower to pay debts. This being so, the judgment is for the wrong party, and is, therefore, reversed.

All concur, except *Woodson, J.,* not sitting.