GEORGE SCHOWE v. AUGUST KALLMEYER, Appellant. — 20 S. W. (2d) 26.

Division One, September 13, 1929.

900

*John W. Booth* and *Fred H. Kasmann* for appellant.

*Jesse H. Schaper* for respondent.

ELLISON, C.—The defendant appeals from an interlocutory decree in partition. The assignments of error go to the point that the trial court erred in striking out a part of appellant's answer and in refusing to charge the plaintiff-respondent with his share of taxes and improvements on the land involved, and one other item, the outlays therefor having been made by appellant over a series of years while in ignorance of respondent's outstanding interest. The respondent's defense, in brief, was that in expending moneys for the above purposes the appellant acted as a mere volunteer, or while

holding possession in right of his wife who was life tenant by virtue of her homestead interest; and that respondent, being only the owner of an undivided share in the remainder, is not liable therefor.

The real estate which is the subject of the action is an eighty-acre farm in Franklin County. The respondent's petition alleges that his father, Henry Schowe, died intestate in February, 1888, owning and occupying it as a homestead. He left three minor children, the respondent, George Schowe, born in 1874 of a former marriage, and Albert and Emil Schowe, children of his second wife and widow, Augusta Schowe. According to the petition, on the death of Henry Schowe the widow, Augusta, and the three children became seized of a homestead in the land and the widow likewise was entitled to dower. Subject to these, the three children severally inherited the fee, each having an undivided one-third interest.

Neither dower nor homestead was ever assigned and the widow made no election, so far as the record shows, but she continued to live on the land until her death in September, 1923. In the meantime, about a year after Henry Schowe's death, she married the appellant, August Kallmeyer, in September, 1899. Twenty years later in 1919 he obtained from Albert and Emil Schowe a warranty deed conveying their interest in the land to him.

Early in October, 1923, about a week after the widow's death, the respondent, George Schowe, presented himself to the appellant, Kallmeyer, and made claim to a third interest in the premises, but Kallmeyer declined to recognize him as a tenant in common, or said he would have to produce pretty good proof. And so the petition alleges the respondent to be the owner of a third interest in the land and prays a partition by sale, accordingly, and for an accounting of the rents and profits for the years 1923, 1924 and 1925, subsequent to the widow's death.

The foregoing condenses and substantially sets out the allegations of the petition, the evidence in support thereof and the legal conclusions drawn by respondent therefrom. But it will be noticed the facts thus far stated do not disclose why Kallmeyer, the appellant, doubted or denied respondent's claim to a third interest in the land.

On this point the undisputed evidence was that Henry Schowe married his first wife over in Warren County in 1873. He left her the next year about the time George was born. She obtained a divorce in 1877. George was reared by his mother in her home and went by her name, Wittnaben. It seems even Henry Schowe's second wife, Augusta, was ignorant of his existence, and the appellant testified that when George came to his home in 1923 and made claim to an interest in the land it was the first time he had ever seen or heard of him. Kallmeyer thought Schowe left only the two children, Albert and Emil.

By his answer the appellant attempted to bring into the case the following facts antedating the history thus far narrated. Augusta had been married before she married Schowe. Her first husband was Henry Rohlfing. Of that marriage two children were born. Rohlfing bought the land in suit in 1875 and the family lived thereon. He died intestate in 1880, leaving Augusta and her two minor Rohlfing children and the land as their homestead and subject also to her dower, though neither dower nor homestead was ever assigned and the widow made no election. The answer alleges, however, that the land that time was worth less than $1500 and was not within the limits of any city, town or village, which made it unnecessary to set out the homestead or to assign dower. The younger of the two Rohlfing children came of age in 1899.

Augusta married Henry Schowe, as has been stated, in 1881. He joined the family and lived on the farm. There was an administration on the estate of Henry Rohlfing, in the course of which the land was sold through the probate court to pay his debts, in 1883. Henry Schowe was the purchaser, paying $2000, part in deferred payments for which he gave his notes. When Schowe died in 1888 the family consisted of the two Rohlfing children, the two Schowe children and the widow. The respondent, George Schowe, was never a member of the household, as appears from the facts already detailed.

Following Augusta's third marriage, to the appellant Kallmeyer in 1889, he cared for the family as husband and step-father, farmed the land, paid the taxes and constructed useful and necessary improvements costing $4000, including a dwelling house to replace the one theretofore on the land, which through accident was destroyed by fire. In addition to this he expended money for another item. There was still a balance of $360.50 due on one of the notes Henry Schowe had given the Rohlfing estate in part payment of the purchase price of the land when he bought it. In the course of administration on Schowe's estate, the note was probated as a demand and Kallmeyer paid it in 1890. The answer alleges the appellant constructed the improvements and paid the probate demand for the benefit of himself and his family; that his wife and children were without means; and that Henry Schowe left no personal estate available for the payment of the demand.

The answer further states that in 1919 for a valuable consideration in the sum of $2000 he obtained a warranty deed to the land from Albert and Emil Schowe, they conveying as the sole and only heirs of Henry Schowe, deceased.

Finally it is alleged that from the time of appellant's marriage to Augusta until her death he held possession of the farm in right of the homestead interest vested in her and her minor children

through the Rohlfing marriage; and that subsequent thereto he continued in possession claiming the fee title under his deed from Albert and Emil Schowe. The pleading further disclaimed any knowledge as to whether the respondent was in truth a son and heir of Henry Schowe and demanded strict proof thereof; and prayed if the fact should be established that the respondent be required to make contribution of a third part of the taxes and probate claim paid, and for the present value of the improvements made, and that the same be charged as a lien against his interest, and for general relief.

At the trial, on respondent's motion the court struck from the answer all the foregoing allegations relating to Augusta's marriage to Henry Rohlfing, the birth of their two children, and the homestead and dower interests arising therethrough; also that part concerning the improvements made and probate demand paid; also the paragraph detailing the purchase of the land by Henry Schowe from Rohlfing's estate in 1883 (though the *respondent* was permitted to introduce the administrator's deed in evidence), and the paragraph concerning the purchase of the land by the appellant Kallmeyer from Albert and Emil Schowe. The allegations as to taxes paid were not stricken from the answer, but the appellant was allowed to prove only taxes paid subsequent to the death of the widow.

The interlocutory decree found that Henry Schowe had a homestead in the land; and that on his death his widow, Augusta and the three Schowe children succeeded to a homestead estate therein; that the widow also had a dower right; that her homestead interest ended on her remarriage to the appellant and thenceforward until her death she was seized in virtue of her dower (or, perhaps, quarantine, though neither the petition nor the decree so designates the interest). The respondent's prayer for an accounting of the rents and profits for the years 1923, 1924 and 1925 was denied, and the appellant was allowed credit for a third of the taxes paid for the years 1923 and 1924. The court found the land could not be divided in kind and ordered a partition sale.

For the purposes of the case we must treat as true the allegations stricken from appellant's answer. When Henry Rohlfing died in 1880 and when Henry Schowe died in 1888, the homestead law of 1875 was in force, governing the point at issue. [Sec. 2693. R. S. 1879; Sec. 5439, R. S. 1889; Laws 1895, p. 185.] The rights of the parties are to be determined by that law. [Bushnell v. Loomis, 234 Mo. 371, 384-5, 137 S. W. 257, 260.] Upon the death of Rohlfing a homestead estate in the land vested in his widow, Augusta, and the two Rohlfing children. The widow had also a dormant dower and quarantine right if decisions construing the homestead law of 1895 are equally applicable to the law of 1875; and we shall so assume. See Chrisman v. Lin-

908

derman, 202 Mo. 605, 622, 100 S. W. 1090, 1095. Her homestead interest was a life estate. As the law then stood, it was *not* terminated by her remarriage. [West v. McMullen, 112 Mo. 405, 410, 20 S. W. 628; Hufschmidt v. Gross, 112 Mo. 649, 655, 20 S. W. 679, 681.] The interest of the two Rohlfing children was an estate for years, terminating as to each at his majority. They and their mother jointly held possession under their several rights, and the mother could not by remarriage or any other act or deed deprive them of their interest. [Phillips v. Presson, 172 Mo. 24, 72 S. W. 501.]

In these circumstances Henry Schowe bought the farm from Rohlfing's administrator in 1883. The law at that time permitted the sale of land by the probate court to pay debts of the deceased owner, subject to the homestead interests of his widow and minor children (Sec. 2693, R. S. 1879; Poland v. Vesper, 67 Mo. 727; Keene v. Wyatt, 160 Mo. 1, 9, 60 S. W. 1037, 63 S. W. 116, 117); and there is no question but that Henry Schowe got a good title by his purchase, but it was *subject* to the quarantine and dower right of Augusta, and the homestead estate vested in her and the Rohlfing children. The sale passed to Schowe the remainder interest in the fee which the Rohlfing children otherwise would have inherited from their father, but it did not affect the preceding homestead and dower interests.

Under these facts, it is plain the three Schowe children had no part or share in the Rohlfing homestead. That estate was solely for the benefit of *Rohlfing's* widow and children, and it did not open up to admit Augusta's two children by her second marriage (Canole v. Hurt, 78 Mo. 649, 652), and much less George Schowe who was a stranger in blood to both Rohlfing and Augusta.

Neither did the three Schowe children acquire a homestead interest through their father, Henry Schowe. Whether Schowe, himself, had a homestead exemption in the land need not be decided; for whatever his interest was, it could not pass in possession to his minor children at his death, because the paramount interests of Augusta and the Rohlfing children intervened; and Augusta's interest continued dominant until 1923, long after all the children had reached their majority. So it is our opinion that the Schowe children had no homestead estate or other possessory interest in the land throughout the thirty-four years from September, 1889, when the appellant Kallmeyer married Augusta, until her death in 1923. They were seized simply of an undivided one-third interest each in the remainder by inheritance from their father, Henry Schowe.

Applying the foregoing conclusion to the immediate issues. It is the duty of the life tenant to pay ordinary annual taxes accruing during his term. But the appellant argues that that law does not fit this case, because the quarantine and homestead interests of the widow and Rohlfing minors were not liable for taxes, thereby leaving the burden to fall on the remaindermen. This contention cannot be sustained.

The tenants of a homestead estate must pay the taxes. [Falvey v. Hicks, 315 Mo. 442, 451, 286 S. W. 385, 388-9; Wicoff v. Moore (Mo.), 257 S. W. 474, 476.] As to the quarantine interest, the general rule is as stated by appellant, 24 Corpus Juris, section 768, page 236. The reason for it is that quarantine is a mere possessory right or privilege accorded the widow, and the heirs can bring the tenure to a close at any time by having dower assigned. [Graves v. Cochran, 68 Mo. 74, 77; Gentry v. Gentry, 122 Mo. 202, 220, 26 S. W. 1090, 1095; Kenney v. McVoy, 206 Mo. 42, 63, 103 S. W. 946, 951-2.] But when, as is alleged in the answer in this case, the amount and value of the land left by the deceased to which the dower and homestead rights of his widow attach, are less than the limit set by the homestead law, dower cannot be assigned. It is submerged in the homestead as long as the latter continues. [Sec. 2694, R. S. 1879; Sec. 5859, R. S. 1919; Chrisman v. Linderman, supra, 202 Mo. 1. c. 621, 100 S. W. 1. c. 1095; Jordan v. Rudluff, 264 Mo. 129, 135, 174 S. W. 806, 808; Smith Bros. Land & Inv. Co. v. Phillips, 289 Mo. 579, 233 S. W. 413.]

We have in this suit an indefeasible homestead life estate running for forty-three years from the death of the husband (Rohlfing) in 1880, during all of which time the heirs were powerless to force an assignment of dower. It will not do to say that throughout this long period the widow was relieved of the duty of paying taxes on the land because of her latent quarantine right, and that the burden rested first on the children who shared the homestead with her until they attained their majority, and thenceforward on the owners of the fee. On the facts pleaded in the answer we hold the appellant was not entitled to contribution from the respondent for taxes paid during the continuance of the mother's homestead life estate, because the respondent was not liable for the taxes accruing during that period. The trial court ruled correctly on this point.

Considering next the appellant's claim to contribution for a third of the $360.50 paid to satisfy the probate demand against the estate of Henry Schowe, deceased, in 1890. The answer contains only the general allegation that appellant made the payment *for the benefit of himself and family*. But at that time his only interest in the land was in right of his wife, and her interest and that of the Rohlfing minor children had come to them directly

from Henry Rohlfing, deceased. These interests were unaffected by the probate demand against *Schowe's* estate. In making the payment, therefore, the appellant protected only the remainder interest of the Schowe heirs and not any possessory interest of his own or his wife's or the Rohlfing minors. Consequently he cannot claim the right of subrogation on the ground that he was compelled to make the payment to save himself.

The only other possible theory on which subrogation might be allowed would be on the theory that he stood in some representative relation to the Schowe children such as authorized him to pay the demand and charge it against their interest in the property in the same manner that an executor, administrator, guardian or curator is sometimes subrogated for payments made by him personally to protect the estate he represents. [37 Cyc. sec. 3, p. 440; Sec. 4, p. 442.] The appellant was not guardian or curator of the Rohlfing minors, so far as the answer shows, though he perhaps stood *in loco parentis* under such cases as St. Ferdinand Loretto Academy v. Bobb, 52 Mo. 357, 360. But whether or not because of that relation the appellant could pay the demand and hold it as a claim against the Schowe children it is unnecessary for us to decide, because, in our view, the allegation in the answer is not broad enough to support a recovery on that theory.

Furthermore, the implication from the answer is that he neither made nor intended to make any such charge against the other two Schowe children, Albert and Emil. He paid the demand thinking they were the sole owners of the remainder interest, and later bought the land from them for the round sum of $2000. If he did not hold it against them, he ought not to be permitted to bring it up against the respondent who claims only a part of the title appellant had absolved in their hands. To rule otherwise would be to countenance an inequitable discrimination against the respondent. [Byrne v. Byrne, 289 Mo. 109, 128, 233 S. W. 461, 465; Hines v. Hines, 243 Mo. 480, 500, 147 S. W. 774, 777.]

Finally, as to the claim for improvements. The appellant's answer does not say when they were made except that it was while the children were minors, and as the youngest of all the children became of age in 1909 it must have been, at the latest, prior to that time. This was ten years before the appellant bought an interest in the land in 1919, and while he was holding in right of the homestead estate of his wife and perhaps of the Rohlfing minor children, as his answer states.

The general rule is that a life tenant has no power to charge the corpus of the estate with improvements, but there are exceptions (Mo. Cent. B. & L. Assn. v. Eveler, 237 Mo. 679, 684, 141 S. W. 877, 26 Ann. Cas. 486, 489, note; 13 L. R. A. (N. S.) 515, note; 21 C. J.

953, sec. 91); and it may be the claim in this instance would come within one of the exceptions if the appellant had been the life tenant at the time, or if his wife were the claimant—this on authority of such cases as Grogan v. Grogan (Mo.), 177 S. W. 649, 650, where it was held a widow in possession of land under her homestead and quarantine right could recover in a partition suit for rebuilding a barn destroyed by fire.

But we do not decide that question. It is not in the case. The appellant's only interest in the land was this. He and Augusta Rohlfing-Schowe were married in September, 1889, before the Act of 1889 giving a married woman control of her real estate went into effect. That law was added by amendment to Section 6869 in the revision of 1889 and did not become effective until November 1 of that year (see Sec. 6614, R. S. 1889). He therefore had a vested common-law marital interest or estate *jure uxoris* in the land. It was not taken away by the statute; and this court has held en banc that such an interest extended to a wife's homestead estate acquired through a former marriage. [Lewis v. Barnes, 272 Mo. 377, 398, 404, 199 S. W. 212, 218, 220.] The case dealt with a homestead under the law of 1865, which was a fee, but as a husband's marital interest also covered his wife's life estates (30 C. J. 527, sec. 43; 13 R. C. L. 1047, sec. 67), we take it the decision is applicable as authority here.

An estate *jure uxoris,* however, was not an interest sufficient to bring appellant's case within any exception to the general rule mentioned in the second paragraph preceding. Under the common law, as is said in 13 Ruling Case Law, section 70, page 1050, "it was well settled that if he (the husband) saw fit to make improvements upon the real estate of his wife, he did it at the risk of receiving back a compensation for his labor by an increased income; and, in the event of her death, he could not charge the estate with the labor, and services and expenses, incurred in improving the real estate." See also, Rogers v. Wolfe, 104 Mo. 1, 12, 14 S. W. 805, 808; Boynton v. Miller, 144 Mo. 681, 687-8, 46 S. W. 754, 755; Curd v. Brown, 148 Mo. 82, 95, 49 S. W. 990, 993.

Neither did the appellant sustain any representative relation to the four minor children—the two Rohlfing children and the two Schowe children Albert and Emil—such as authorized him to construct the improvements and make them a charge against the remainder interest. Conceding again he stood *in loco parentis* he was not their curator and the land had come to them from another source. By force of the statute he could not assume control of their real estate not derived from him without being appointed curator and giving bond. [Sec. 5279, R. S. 1889; State ex rel. v. Staed, 143 Mo. 248, 252, 45 S. W. 50.]

And so, summing the matter up, we are unable to see any theory under the facts pleaded in the answer which will entitle the appellant to recover for the improvements. So far as concerned his own interest in the land he made them at his own risk; so far as his wife's interest was concerned they are presumed to be a gift; and so far as touched the remainder interest of the Schowe children their construction was not authorized by law. The mere fact that the appellant subsequently bought an undivided interest in the fee which brings him into this case as a party, cannot aid him.

It has been said that in equitable partition even where money compensation for improvements is claimed "the only good faith required in such improvements is that they should be made honestly for the purpose of improving the property, and not for embarrassing his cotenants or encumbering their estate, or hindering partition." [Freeman on Cotenancy and Partition (2 Ed.) sec. 510, p. 680.] See also 47 C. J. sec. 506, p. 472, sec. 507, p. 474, sec. 855, p. 584; 20 R. C. L. sec. 17, p. 736; Armor v. Frey, 253 Mo. 447, 477, 161 S. W. 829, 838. But it is evident this rule does not apply when the one making the improvements neither has nor thinks he has an interest in the land which would support a claim for compensation.

The point is also made by appellant, in argument, that the respondent cannot maintain this action for partition because he is out of possession. [Buck v. McMinn (Mo.), 300 S. W. 497, 501.] That rule, however, does not apply to actions in equity for partition. [Waddle v. Frazier, 245 Mo. 391, 402, 151 S. W. 87, 90; Barnard v. Keathley, 230 Mo. 209, 223, 130 S. W. 306, 310; and in our opinion the answer in this case takes it into equity, Byrne v. Byrne, supra (289 Mo. l. c. 122, 233 S. W. l. c. 464); Lease v. Bratton (Mo.), 293 S. W. 140, 141.] Accordingly the point is ruled against the appellant.

The result of it all is that even under the allegations stricken from the answer the conclusions reached by the trial court are correct on all three assignments of error—with respect to the claim for contribution for taxes, for the probate demand paid, and for the improvements. But we think the court was in error in its intermediate conclusions or findings that the Schowe children had a homestead estate in the land, and that Augusta Rohlfing-Schowe-Kallmeyer lost her homestead life estate on her marriage to Henry Schowe. These findings, however, do not affect the decree proper. Accordingly, the cause is affirmed and remanded for further proceedings not inconsistent herewith. *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.