Margaret K. HOVEY, Respondent,

v.

Charles E. HOVEY, Appellant.

No. 50134.

Supreme Court of Missouri,

Division No. 1.

June 8, 1964.

**622**

James H. Wollbrinck, St. Louis, for appellant.

John P. Sullivan, Clayton, for respondent.

COIL, Commissioner.

Margaret Hovey was granted a divorce from Charles Hovey on October 27, 1960. Charles counterclaimed to establish a resulting trust in real estate at 17 Washington Terrace in St. Louis, the title to which was in plaintiff's name. Subsequent to the divorce decree and in May 1960, the counterclaim was tried in equity resulting in a judgment for the plaintiff based on a finding that defendant had made a gift of the property to her at the time it was purchased in February 1953.

Defendant has appealed and contends that the trial chancellor erred in the admission and exclusion of evidence and in failing to find that defendant had established that plaintiff held title to the Washington Terrace property in trust for him.

Plaintiff and defendant were married in August 1945. Defendant was in the insurance business in various capacities and plaintiff worked throughout the period of their marriage for different automobile dealers as office manager or secretary (which type of work she had done prior to her marriage and since 1936). Shortly after their marriage, late in 1945 a house in Richmond Heights was purchased, the title to which was in both their names, both executing the necessary mortgages and notes. Defendant testified that he purchased the Richmond Heights property, made the payments thereon by checks on his separate bank account; while plaintiff testified that she made at least one payment on the mortgage and had purchased all the furnishings for the house, having expended therefor $4,500 to $5,000. In any event, and here pertinent, the Richmond Heights house was sold in January 1953 for $10,500 and they received a check payable to both in the

amount of $6,100. That money was used in the purchase of the 15-room Washington Terrace house in February 1953. The purchase price was $27,000 including the carpets and draperies then in the premises.

Defendant testified that he alone executed the contract of purchase and that his wife was not present but that the seller's warranty deed at his direction conveyed the title to his wife only. As we understand, there was $7,000 cash paid and a $15,000 first mortgage and a $5,000 second mortgage securing promissory notes in those amounts which were signed by both Mr. and Mrs. Hovey. In March 1953 Mr. Hovey executed an assignment to Mrs. Hovey of certain renewal commissions due him each month from Massachusetts Indemnity and Life Insurance Company. He testified such was done to insure the funds which would ultimately pay the mortgages. Mrs. Hovey testified the assignment was made to insure the gift of the house to her. In any event, at the same time the renewals were assigned, she executed a release of the assignment which her husband held. The renewal commissions received by Mrs. Hovey by virtue of the assignments from 1953 through January 1960 totaled $17,751.04. According to Mrs. Hovey, and not seriously disputed by her husband, the renewal commissions received from 1956 through January 1960 were assigned to the Bureau of Internal Revenue because of a tax lien which had been filed against them on account of unpaid income taxes due by virtue of joint returns which they had filed. Thus, as we see it, about $9,800 of the $17,751 was not applied to the mortgage payments. In addition to the mortgage payments made from renewal commissions defendant testified that he paid an amount of $1,375; that he had paid the insurance premiums for fire and extended coverage; and it was conceded that he had paid some $5,800 for permanent improvements on the property during the period of the marriage. Defendant's conclusion was that he had paid $14,610.64 against the mortgage indebtedness on the property.

Mrs. Hovey testified that from 1945 through 1960 she spent $20,490.30 of her money to run both the Richmond Heights and Washington Terrace houses, to pay on the mortgages and to purchase furniture and furnishings; and that such sum did not include any money that came from the assignment of the renewal commissions. In addition she paid for her own personal needs during the entire period of the marriage.

Mrs. Hovey testified that her husband had ability as an insurance man but had failed to apply himself; that he was a heavy drinker during practically all the years of the marriage; that she felt insecure by reason thereof; and that by July 1960 things had reached the point where they agreed there was no reason to continue their marriage and they separated, she remaining in the Washington Terrace home.

Defendant's income varied, sometimes greatly, from year to year. In 1949 it was $5,274; in 1950, $5,000; in 1951, $3,770; in 1952, $13,096; in 1953, $20,561; in 1954, $12,522; in 1955, $2,779; in 1956, $4,000; in 1957, $4,000; in 1958, $5,700; and in 1959, $6,800. In 1954 an insurance agency partnership was dissolved and defendant received $40,000 as a result. Mrs. Hovey testified that the money lasted two years, that he practically retired, that he spent all the money, that she received no part of it, and that she worked every day.

During the period of their marriage Mrs. Hovey's income remained fairly constant at about $4,000 a year. She testified that she had paid $3,500 on the indebtedness due on the Washington Terrace property up to the time of the divorce and from the divorce to the date of trial about $4,620. Since the divorce Mr. Hovey had made one payment of $200.

Defendant testified that he did not discuss with his wife the possibility of placing the house in her name at the time he was attempting to arrange financing for it; that he did not intend a gift to his wife at the

time the title was placed in her name; that he did not make a gift to her of the renewal commissions; and he offered to testify that the reason for placing the title in her name was because he was a member of a partnership and, as we understand, if title to the Washington Terrace property was in his name, that property would be an asset liable for partnership debts; that Mrs. Hovey knew the reason for placing the title in her name and acquiesced in that arrangement and understood that he was not making a gift of the house to her; that he had suggested after they moved into the house that the title be placed in both their names but she had refused and he did not insist upon it.

Mrs. Hovey testified that her husband made a gift of the Washington Terrace house to her and that she understood that he had assigned his renewal commissions to her so that the gift of the house would be assured, even though she executed at the same time a release of that assignment which he held. She testified that Mr. Hovey told her that she should have the property because she had worked hard and "tried to put things together, and he wanted to assure me, since he offered no other security, that at least I would always have a piece of property in my name," and it was understood that he was to have no interest in the property.

There was evidence that in February 1953 defendant had a $74,000 term insurance policy on his life in which his wife was beneficiary. Further evidence showed, however, that the term insurance policies, which perhaps totaled $84,000 or $85,000 (two policies) had short and sporadic lives; one policy was issued in October 1951 and expired in March 1952, was reinstated and expired in February 1954; the other policy was issued in July 1953, lapsed a month later, was reinstated in February 1954 and lapsed in August 1954.

A witness testified that he was a resident in Washington Terrace from 1947 to approximately 1961 and from 1952 to 1960 was a trustee for the residents' organization; that in 1958 or 1959 there was a meeting in his home of the Washington Terrace property owners, pertaining to the modernizing of restrictions in the Terrace; that it was necessary that the document setting forth the modifications of existing restrictions be signed by the property owners; that Mr. Hovey hesitated, and then said to his wife, "You go ahead and sign, I don't have any interest in this property." Mr. Hovey did sign, however, because the witness advised him that counsel had said it was necessary that both husband and wife sign the instrument.

Defendant contends that the trial court erred in excluding certain testimony and in rejecting certain offers of proof. We have examined all of the instances to which defendant refers in his brief and find either that the court did not exclude the answer made by defendant, or did not prevent or prohibit defendant's counsel from pursuing the subject of the inquiries in question, or did not adversely rule upon offers of proof. Be that as it may, however, we have in summarizing the evidence above and shall in reaching our conclusion herein, consider the evidence which defendant claims the court excluded and the testimony, and the inferences apparently intended to be drawn therefrom, which defendant proffered by way of offers of proof.

Defendant also contends the trial chancellor erred in admitting evidence pertaining to "work habits, personal habits and financial circumstances that existed after the instant that the deed to the real estate was taken, and the Court erred in basing its finding of fact and decree upon said evidence, * * *" because the intention at the time the title was acquired determines whether there was a resulting trust, and thus evidence as to what happened later was immaterial and irrelevant.

It is true, of course, that a resulting trust arises, if at all, by reason of facts which exist at the time title is acquired and does not arise by reason of subsequent occurrences. It is also true, however, that

evidence of the parties' conduct with reference to the property subsequent to the time of the acquisition of title may be admissible to prove that there was no intent to make a gift to the transferee. Hampton v. Niehaus, Mo., 329 S.W.2d 794, 799, 800. It follows that evidence by plaintiff in this case tending to explain defendant's conduct with reference to the property subsequent to the acquisition of title was properly admissible.

■■ It is the law that where a husband pays the purchase price and causes title to property to be transferred to his wife, a rebuttable presumption arises that the husband intended to make a gift to or a provision for the benefit of his wife and the burden to prove that he did not so intend was and is upon him. The evidence adduced to rebut the presumption of gift must be strong enough to convince the trial chancellor in the first instance and this court on a de novo review that the husband did not intend that his wife have the beneficial interest in the property despite the fact that he caused legal title to be placed in her name. Hampton v. Niehaus, supra, 329 S.W.2d 799 [1–5] and cases there cited.

■ We review this equity case de novo and reach our own conclusions as to the weight of the evidence, taking into account the trial chancellor's opportunity to judge the credibility of the witnesses who testified before him. So reviewing the relevant evidence in the light of the aforestated applicable principles, and assuming arguendo that defendant paid the entire purchase price (despite evidence to the contrary), we are of the opinion that he failed to sustain his burden to prove that at the time he caused the property to be placed in his wife's name, he did not intend to make a gift of that property to her.

■ The only evidence which tends to refute that conclusion is defendant's conclusory and self-serving statements that he did not intend to make a gift of the house to his wife but intended that she hold it in trust for him; that Mrs. Hovey acquiesced

in that arrangement and understood that the reason was to exempt the house from liability for some possible, and apparently entirely speculative, partnership obligation.

Opposed to that evidence is the testimony of Mrs. Hovey to the effect that her husband did make a gift of the house to her at the time he directed the title be placed in her name only, and that he did so, as he said, in order that she might have the security of owning a home, inasmuch as he had been unable to offer her other financial security and in recognition of the fact that she had worked during the period of their marriage trying "to put things together."

The facts that Mr. Hovey made payments on the mortgage (the $187 monthly payments included taxes) through the assignment of renewal commissions and otherwise, paid fire insurance premiums and paid for some permanent improvements, do not rebut the presumption of gift under the circumstances of this case. We have in mind the husband and wife relationship, that Mr. Hovey continued to live in the house, and the fact that the property was heavily mortgaged and in need of repairs and improvements. That he performed the above-noted subsequent acts with respect to the property under the stated circumstances is not inconsistent with the theory that he made a gift of the property to his wife. Hampton v. Niehaus, supra, 329 S.W.2d 800, 801 [7, 8].

This case, like most cases involving the question whether a divorced husband has established a purchase money resulting trust in property he caused to be placed in his wife's name, depends essentially upon the credibility of witnesses and, in this case, the credibility of the testimony of Mr. and Mrs. Hovey. We defer to the trial chancellor's finding in that respect, as evidenced by the decree adjudging that defendant had made a gift of the property to the plaintiff, and a consideration of all the relevant evidence convinces us that defendant failed to sustain his burden to prove that he did not

intend to make a gift of the house to his wife.

While, as we have heretofore noted, defendant's counterclaim alleged that plaintiff held the property in trust for defendant and prayed for a decree declaring that defendant was the sole owner of the property and while appellant contends in his brief that "the presumption of a gift was rebutted" and that a "resulting trust was established * * * by clear, cogent and convincing evidence," defendant seems also to suggest that he wants this court, by entering its own finding and decree to "do equity under the law." While appellant does not specifically seek other relief on any definite theory, such as a claim that a resulting trust arose by reason of a part payment of the purchase price by him, the cases which appellant cites (without any demonstration of their application to the present facts) suggest that defendant may mean that he should be granted some relief under all the evidence. For example, his cited case of Taylor v. Taylor, Mo., 270 S.W.2d 806, was a suit to establish ownership of a half interest in realty, title to which stood in the wife's name only; and another cited case, Fisher v. Miceli, Mo., 291 S.W.2d 845, was an action for a judgment to declare a former husband the owner of a one-half interest in certain real estate, title to which had been conveyed to his former wife during their marriage.

It seems clear, however, that our holding heretofore that defendant failed to sustain his burden to rebut the presumption that he made a gift of the Washington Terrace property to his wife, precludes any relief to him based upon the proposition that he has or should be declared to have any interest in the property.

 Although the trial chancellor's decree adjudged that plaintiff held title to the furniture and furnishings in the Washington Terrace house free and clear of any right, title, or claim of defendant, the parties here agree that since the divorce they hold title to the furnishings and furniture which were in the Washington Terrace property at the time of the separation as tenants in common. The judgment below should be modified to give effect to that agreement.

The case is remanded with directions to modify the judgment as herein directed, and the judgment as so modified is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur except HENLEY, J., not sitting.