Clyde B. COFFMAN, Sr., Respondent,

v.

Zona COFFMAN, Alva Gilliam and Judith Gilliam, his wife, Alva Lynn Gilliam, a minor, Gary Gilliam, a minor, and Stephen Gilliam, a minor, and all members of the class composed of the heirs at law of Alva Gilliam, and Alva Gilliam as guardian ad litem for his minor children, Alva Lynn Gilliam, Gary Gilliam and Stephen Gilliam, and all of the unborn children of Alva Gilliam, Appellants.

No. 51837.

Supreme Court of Missouri, Division No. 2.

April 10, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied May 8, 1967.

Samuel Richeson, Dearing, Richeson, Weier & Roberts, Hillsboro, for respondent.

Schwartz, Schwartz & Gilden, St. Louis, for appellants.

PRITCHARD, Commissioner.

Plaintiff was successful in his suit to have deeds to a lot in Potosi, Missouri, set aside and for declarations that he is the owner thereof and for an equitable lien for alleged good faith improvements on other lots in Potosi.

Count I of plaintiff's first amended petition, upon which he elected to submit his case to the court, was filed during the course of the hearing below and after it was learned that title to Lots 3 and 4, Block 3, of Nicholson Third Subdivision, Potosi, Missouri, was held by deed dated November 21, 1960, by Zona Coffman and Alva Gilliam (her son) as life tenants only with a remainder to the heirs of said Alva Gilliam. Alva's children were brought into the suit and a class representative was appointed to represent unborn heirs, and the trial proceeded. By this count plaintiff claimed that he fully performed an oral contract by which he agreed with his then wife, Zona, that title to certain real estate individually owned by him (Lot 80 of the Old Town of Potosi) would be placed in their joint names. Real estate which plaintiff believed to be owned by Zona (said Lots 3 and 4) would also be placed in their joint names. The two would then contribute equally the funds to build a new home on Lots 3 and 4, and for furniture therefor. It is alleged that Zona did not perform the agreement at all, except to cause to be conveyed to herself and plaintiff Lots 3 and 4 which she had, unknown to him, previously caused to be conveyed to herself and her son as life tenants, with remainder to her son's heirs, which facts were alleged to have been falsely and fraudulently represented to plaintiff. The answers were general denials.

The relief granted to plaintiff was that his title to Lot 80 was restored to him free of Zona's interest; the title to all purchased furniture was decreed to be in him; and an equitable lien was declared for plaintiff upon Lots 3 and 4 (for his improvements, materials and labor furnished by him in the construction of the new home) for $14,500, subject to a note and deed of trust for $2,116.20 to the Ozarks Federal Savings and Loan Association and the value of the remainder interest, found by the court to be $600, in the heirs of Alva Gilliam, to be held by the guardian ad litem until all such heirs are ascertained, then divided among them. By amendment of the judgment, the property was ordered sold by the sheriff at public sale.

Plaintiff and Zona had stormy lives together as husband and wife. They were first married in 1947, then divorced in 1952 at which time Zona conveyed Lot 80, which had an older house on it, to plaintiff. Both

had been previously married, Zona to Gilliam of which marriage her son, Alva, was born. Zona then married and divorced men by the name of Farrell and Roberts, and in 1959 she and plaintiff remarried. They thereafter had six or seven separations, and Zona filed three divorce suits against plaintiff which were dismissed, then a fourth one which was pending at the time of this trial.

According to plaintiff, in August or September, 1962, after one of their separations, he and Zona had a conversation relative to changing their properties to joint title. Zona had previously acquired title to Lots 3 and 4, Block 3, Nicholson Subdivision. (Her deed, November 21, 1960, Defendant's Exhibit 4, was from John J. Boyer and June Boyer, his wife, and granted the property to "Zona Coffman and Alva Gilliam, as life tenants only with a remainder to the heirs of said Alva Gilliam.") Although plaintiff thought that Zona, while they were separated, withdrew $600 of his funds to pay for the lots, the contemporaneous transactions show that Zona borrowed $700, with her $3,000 time certificate of deposit as collateral, and issued her own check, $700, marked "For Lots," to the Boyers. Zona admitted she took the $600, but testified that she used it to live on during one of the separations.

On September 8, 1962, plaintiff and Zona by deed revested title to his Lot 80 in themselves as husband and wife. On October 12, 1962, a deed for Lots 3 and 4 was executed by plaintiff and Zona, Alva Gilliam and his wife Judith, to Zona Coffman and Clyde B. Coffman, and was recorded December 31, 1962. Plaintiff testified that this latter deed was made when about half of the outside frame of the house was completed, which was a few days before it was recorded, December 31, 1962.

Plaintiff and Zona lived for several months in her house trailer, situated either on Lots 3 and 4 or nearby on some other lots she owned. Prior to the start of construction of the house, and while they were separated, plaintiff testified that a conversation took place (the fact of which was denied by Zona) with respect to Lot 80, "She asked me to put her name on it. Kept on and I told her I would. I said, 'If you think we'll get along.' And she said, 'Well, I know we will.' Said, 'That's the reason we haven't got along,' said, 'you wouldn't put nothin in my name, you wouldn't trust me.' Said, 'Trust me like that, put it in my name and we'll get along.' Said, 'We'll have to, we'll get along.'" Later, in October, 1962, about two months after they went back together, plaintiff started the house using his money after Zona told him she had her money on interest and didn't want to lose it. Each was to put the other's name on the titles to their property, and each was to pay half of the cost of construction of the house. Plaintiff expended about $9,500 for materials and bought all of the furniture, new and used, for the new house. He borrowed a portion of the money, both for materials and furniture, and paid it all back except the $2,116.20 still unpaid to Ozarks Federal Savings and Loan Association. Zona, as she admitted, put "not one red penny" of her separate funds into the house, and denied that she agreed so to do. Plaintiff's testimony, although varied in wording, was that if he would build the house on her two lots she would put his name on it with her, that they were to go "partners," each to pay half on the costs. "She wanted me to build a house and said, she said I will put your name on the deed. She said my son's name is on there and I'll have it made over in mine and your name." At the time the deed was made, Zona said she didn't know that Judy's name (Alva's wife) was on it, "I don't know why she wants to stick her name on there, 'Alva,' that's her son, 'was the only one supposed to be on there.' Said she didn't know that Judy's name was even on there." Plaintiff did not know about Alva's "heirs" being on the deed until the matter came up in this suit, and Ozarks Federal Savings and Loan Association did not say anything about it when they had

the abstract of title made up. Strangely, Zona also testified that her first knowledge that Alva's heirs were on her deed was when the trial was stopped earlier (for that reason). She did not know when she made the deed of her lots to plaintiff and herself that the title to that property was in such shape that her grandchildren would get it on the death of herself and her son Alva. She thought she was making good and perfect title in herself and plaintiff—she thought it was right to have plaintiff's name on the deed after he started the house.

In a conversation with her niece, Neva Hibbert, had during the construction of the house, Zona told her with respect to her intentions as to what she would do with the new house, "Well, she said that after he built it she'd kick him out, she did say that. And then she says, 'No, I wouldn't do that.'"

While he was building the house, plaintiff tried to get Zona to put up some of her money and she said she wouldn't do it. "She didn't want no interest in it. She wasn't puttin' a dollar of her money in it. She said, 'You started it, you go ahead and finish it.'" At one place, plaintiff testified that after the outside walls were on the house they agreed that they would both work to finish it on the inside; that there was no certain amount to be paid by either party; and that they were supposed to go together and pay for it. Zona did, according to her testimony and that of her witnesses, Jones and Gibson, perform work in cleaning up after carpenters, shoveling plaster, polishing and cleaning tile, setting out shrubbery, flowers and trees and in mowing the lawn, all after she returned from her work at the Brown Shoe Company.

■ In this appeal, Zona understandably but erroneously attacks the judgment on the ground that the evidence does not establish as grounds for relief either the theories of resulting or constructive trusts in Zona for the benefit of plaintiff. Plaintiff referred to those theories in his first amended petition, and the trial court's judgment entry does not precisely set out the theory upon which relief was afforded plaintiff. Zona is correct that these theories cannot apply. The facts giving rise to a right to relief arose after the deed (to Lot 80) was executed—i. e., Zona failed to perform her part of the agreement subsequently to when it was made. "A resulting trust 'must result or arise from facts which occur "at the time of or anterior to" the execution of the conveyance by which the title passes and "cannot be created by subsequent occurrences."'" Welborn v. Rigdon, Mo., 231 S.W.2d 127, 133 [9–11], and cases cited; Hovey v. Hovey, Mo., 379 S.W.2d 621, 624 [1–3]; Jacobs v. Jacobs, et al., Mo., 272 S.W.2d 185, 189 [11, 12], ("[T]he trust must arise from the facts existing at the time title to the land was acquired; and cannot be created subsequently by the expenditure of the claimant's money in improving the property."); Davis v. Roberts, et al., 365 Mo. 1195, 295 S.W.2d 152, 156 [10, 11]. As to the theory of constructive trust, there must be evidence of fraud, which is never presumed, and which cannot be proved by mere inference. Thomason v. Beery, 361 Mo. 424, 235 S.W.2d 308, 312 [4]; and see Basman v. Frank, Mo., 250 S.W.2d 989, 994 [7–9], where it was held that fraud may be established by circumstantial evidence. Here, there is no evidence from which it might be legitimately inferred that at the time of executing the deed to Lot 80 Zona had a dishonest purpose of later not performing her part of the agreement. There was not a misrepresentation of a present or pre-existing fact, a promise to do a certain thing, with a present intention not to do it. See Yerington v. Riss, Mo., 374 S.W.2d 52, 58 [5], for a discussion, cases and authority on this aspect of fraud. Plaintiff's statement in his brief that "In our opinion, the Court seems to base this holding on the ground of rescission of the contract on the basis of fraud" is of no aid here.

■ Under the broad powers of a court of equity, and under the prayer for general

relief by plaintiff, Prasse v. Prasse, Mo., 77 S.W.2d 1001, 1006 [7], these facts show combined theories by which we affirm the relief granted plaintiff. The first is that he entered the contract in good faith and performed completely his part thereof, and parted with his consideration in reliance upon Zona's promises to perform. He became a good faith improver of what he thought was his property in fee simple with Zona. (All he had was a joint life estate with her, after which the property, Lots 3 and 4, was to eventually, upon Alva's death, go to her grandchildren.) The trial court, having seen and heard plaintiff and Zona, has determined that his version of the transactions is true (and we defer to that determination), that there was an agreement as testified to by plaintiff (but denied by Zona). In reliance upon Zona's promise to advance half the funds and to create an estate by the entirety in fee between him and Zona of her property, plaintiff revested title to his Lot 80 with her; he used his funds and labor in erecting the new home on the lots owned by Zona; and albeit later than the initial agreement, he purchased all of the furniture upon her promise to pay half of that. Since the interests of Zona's minor grandchildren, and any grandchildren who were unborn, were involved in the title to Lots 3 and 4, plaintiff had no adequate remedy at law. He was therefore entitled to seek an equitable lien for the value of his improvements on the minor's remainder interest based upon the fact that Zona and her grandchildren were unjustly enriched, pursuant to the contract for such improvements between Zona and plaintiff.

Of course, in this state a wife is competent to contract with her husband. Rice, Stix & Co. v. Sally, 176 Mo. 107, 75 S.W. 398, 404; Hall v. Greenwell, 231 Mo. App. 1093, 85 S.W.2d 150, 155 [3], and cases cited. Although, as Zona points out, a rebuttable presumption arises that a husband intends a gift to his wife where he pays the purchase price of property which is conveyed to them as tenants by the entirety, Hovey v. Hovey, supra, loc. cit. 379 S.W.

2d 625 [4, 5], the evidence is clearly convincing that plaintiff conveyed his property, Lot 80, on the condition that Zona would perform her promise to share in the construction cost of the new house and the furniture, and would cause good title to her Lots 3 and 4 to be conveyed to the both of them in fee simple as tenants by the entirety. Thus, the conveyance was made upon a condition which was not performed. The general rule of the presumption as to the improvements being for the wife's benefit, 41 C.J.S. Husband and Wife § 299, p. 784, is again rebutted by the evidence of the contract. In that same section it is said, "Where the husband may contract with his wife, improvements made by him may, by agreement between them, create a charge or lien in his favor * * *," and "The husband should be reimbursed where the improvements were made because of a mistake in a deed naming him as well as his wife as grantee, or in the honest belief that he was improving his own land." Here, plaintiff had no knowledge that Zona (with her son) had only a life estate in the property, and Zona stated she also had no knowledge thereof. A mutual mistake as to the state of that title existed, warranting the avoidance of the agreement and restoration of the parties to their status quo in equity. 30 C.J.S. Equity § 47, p. 863 et seq.

In the situation here presented, the minor children of Alva (themselves and as representatives of a class unborn) not being parties to the contract between Zona and plaintiff could not properly be sued by him at law to recover damages for Zona's breach of contract (in which was also involved the mutual mistake of fact as to title to Lots 3 and 4). Plaintiff had no remedy at law against such minors and unborn children. The principle of Radford v. Radford, Mo., 388 S.W.2d 33, where the sole ground for relief was failure of consideration of an agreement by a son to support his father, the grantor (who was put to his remedy at law, an action for damages for breach of contract), does not apply. The execution of the deed here to Lot 80 was in addition to

and a part and parcel of the consideration furnished by plaintiff in the construction of the house, the title of the lots thereof being mutually mistaken to be good by the parties. Plaintiff was a good faith improver of those lots, and he is entitled to his equitable lien even as against the minor defendants. See 42 C.J.S. Improvements §§ 8, 12b, pp. 444, 450. See also, for the proposition that as between a husband and a wife, the husband is entitled (under a prayer for general relief, as here) to an equitable lien of one half of funds drawn from a joint bank account between them and placed upon the separate property of his wife as improvements thereon, Prasse v. Prasse, Mo., 77 S.W.2d 1001, 1006 [7].

■ Plaintiff, having shown himself entitled to equitable relief in the avoidance of his agreement, by reason of being a good faith improver, mistake as to title, and failure on the part of Zona, his wife, to perform her part of the agreement, is not barred by the principle announced in Curd v. Brown, 148 Mo. 82, 49 S.W. 990, and Holman v. Holman, Mo., 183 S.W. 623, that a husband cannot recover compensation for improvements made during the coverture upon the wife's land. This case also does not rest alone upon a failure to pay money, and Hahn v. Hahn, Mo., 297 S.W.2d 559, denying equitable relief upon that ground, is inapplicable. It is true that "The doctrine of 'equitable lien' applies only in cases where the law fails to give relief and justice would suffer without the equitable remedy, but the doctrine has prescribed boundaries and generally there must be an express agreement, or conduct or dealings of the parties from which an intention may be implied, that some specific property shall be appropriated as security for a debt or obligation before equity will consider that a lien should be declared on the property." Wilkinson v. Tarwater, Mo., 393 S.W.2d 538, 542 [1, 2], and cases cited. But that

principle is not exclusionary of our situation where plaintiff is a good faith improver of property which he, with his wife, mistakenly believes is owned by him and his wife as tenants by the entirety. Prasse v. Prasse, supra, 53 C.J.S. Liens § 4, p. 845. Nor does the general rule here apply that a life tenant cannot charge the corpus of an estate with improvements, Schowe v. Kallmeyer, 323 Mo. 899, 20 S.W.2d 26. Plaintiff believed himself (under the mutual mistake of fact) to be a fee simple owner with Zona, not merely a life tenant.

■ Plaintiff here is not seeking to bind the minor defendants to his contract, but only to prevent their unjust enrichment as to the value of his improvements. § 475.135, RSMo 1959, V.A.M.S., does not prevent the jurisdiction over them to adjudicate their remainder rights as incidental to the contractual rights and equitable relief as between plaintiff and Zona.

With respect to the furniture, the evidence shows that plaintiff has it in his possession and that he furnished all of the money for its purchase. As a part of this equity suit, the trial court did not err in decreeing title to the furniture to be in plaintiff.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

FINCH, Acting P. J., and DONNELLY and STORCKMAN, JJ., concur.

EAGER, P. J., not sitting.